2020 IL 125330

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125330)

THE WILLIAMSON COUNTY BOARD OF COMMISSIONERS *et al.*, Appellees,
v. THE BOARD OF TRUSTEES OF THE ILLINOIS MUNICIPAL
RETIREMENT FUND *et al*., Appellants.

*Opinion filed June 4, 2020.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Karmeier, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

## OPINION

¶ 1　　The issue in this case is whether section 7-137.2(a) of the Illinois Pension Code (40 ILCS 5/7-137.2(a) (West 2016)), altering the certification process and eligibility requirements for elected county board members' participation in the Illinois Municipal Retirement Fund (IMRF), violates the pension protection clause of article XIII, section 5, of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5).

Plaintiffs' continued eligibility and participation in IMRF was terminated, effective February 2017, after the Williamson County Board of Commissioners failed to comply with that provision. In an administrative hearing, the defendant Board of Trustees of the Illinois Municipal Retirement Fund (Fund) affirmed that decision.

¶ 2        On administrative review, the trial court reversed the Fund's decision. In relevant part, the court found that section 7-137.2(a) of the Pension Code was unconstitutional because it violated the pension protection clause of article XIII, section 5, of the Illinois Constitution.

¶ 3        The Fund appealed directly to this court. For the following reasons, we affirm the circuit court's judgment.

¶ 4                                  I. BACKGROUND

¶ 5        This controversy involves three plaintiffs, Robert Gentry, Ronald M. Ellis, and James D. Marlo, all duly elected members of the Williamson County Board of Commissioners.[1] In pertinent part, the Pension Code originally allowed elected county board members to participate as contributing members and participants in the IMRF if the following two conditions were met: (1) the IMRF participant must occupy a position requiring 1000 hours of service annually if, as here, the employer adopted a resolution or ordinance limiting IMRF participation to public employees in positions expected to require 1000 hours of public service (40 ILCS 5/7-137(b)(1), (e) (West 2012)) and (2) the public employee, here a county board member, individually filed with the IMRF an election to participate in it (40 ILCS 5/7-137(b)(2) (West 2012)).

¶ 6        The parties agree that in 1968 the Fund, pursuant to authority granted by the Pension Code (40 ILCS 5/7-198 (West 2012)), adopted an administrative rule requiring the governing body of a participating employer to adopt a resolution certifying that the position of elected governing body member required the hourly standard for any individual member of that body to participate in the IMRF. Ill. Mun. Ret. Fund Bd. Res. No. 1968-7273 (Nov. 22, 1968), *superseded by* Ill. Mun.

---

[1]Williamson County operates under the commission form of government. See 55 ILCS 5/2-4001 to 2-4010 (West 2016). It is governed by a three-person board of commissioners.

Ret. Fund Bd. Res. No. 2019-05-09(d) (May 17, 2019). The parties also agree that Williamson County, plaintiffs' employer, complied with the Fund's 1968 administrative rule.

¶ 7 There is also no dispute that all three plaintiffs satisfied the original requirements for IMRF participation. Plaintiff Gentry was first elected to the Williamson County Board of Commissioners in the 2004 general election and became a participant member in IMRF on December 6, 2004. Plaintiff Ellis was first elected to the Williamson County Board of Commissioners in the 2008 general election and became a participant member in IMRF on November 12, 2008. Plaintiff Marlo was first elected to the Williamson County Board of Commissioners in the 2012 general election and became a participant member in IMRF on November 30, 2012.

¶ 8 On August 26, 2016, however, the General Assembly enacted Public Act 99-900, § 10 (eff. Aug. 26, 2016), amending parts of section 7-137 of the Pension Code. This appeal focuses on the legislature's creation of a new section 7-137.2 of the Pension Code that altered the IMRF eligibility for elected county board members. Generally, section 7-137.2 required for the first time that (1) all county boards certify within 90 days of each general election that their county board members were required to work sufficient hours to meet the hourly standard for IMRF participation (40 ILCS 5/7-137.2(a) (West 2016)) and (2) county board members who participate in IMRF submit monthly time sheets demonstrating that they met the annual hourly standard (40 ILCS 5/7-137.2(b) (West 2016)).

¶ 9 Four days after the enactment of Public Act 99-900, the Fund issued "Special Memorandum #334" to the authorized IMRF agent in every Illinois county. See 40 ILCS 5/7-135 (West 2016) (the authorized agent is an individual at every IMRF participating employer who is designated to act on behalf of the employer). Special Memorandum #334 explained that, for a county board member to be eligible for IMRF participation, the county board must adopt a resolution certifying that the position of county board member will require the performance of at least that county's applicable hourly standard. In addition, the resolution must be adopted within 90 days of each election when a member of the county board is elected or reelected.

- 3 -

¶ 10 Special Memorandum #334 admonished that, "[i]f the County Board fails to adopt the required IMRF participation resolution within 90 days after an election, the entire Board will become ineligible and IMRF participation will end for those Board members in IMRF, as of the last day of the last month in which the resolution could have been adopted." The memo further provided a variety of instructions on compliance with the monthly time sheet requirements.

¶ 11 The Fund also sent a direct mailing to every individual county board member who was participating in IMRF when Public Act 99-900 took effect. These direct mailings were nearly identical, with the only substantive difference addressing the applicable hourly standard. The Fund contends that plaintiffs were sent the "1,000-hour standard" letter in a mass mailing on September 9, 2016. Although not at issue in this appeal, plaintiffs deny that they received this letter.

¶ 12 On November 8, 2016, plaintiff Gentry was reelected to the Williamson County Board of Commissioners, triggering the new requirement in section 7-137.2(a) that the county board adopt a resolution certifying that the position of elected county board member required the performance of duty in excess of 1000 hours per year. Under the 90-day window of that provision, the resolution was required to be adopted by February 6, 2017. The Williamson County Board of Commissioners, however, did not adopt the required resolution until February 23, 2017, more than two weeks after the lapse of the statutory deadline.

¶ 13 On March 9, 2017, the Fund notified plaintiffs Gentry, Ellis, and Marlo that the Williamson County Board of Commissioners did not adopt within 90 days of the 2016 general election a resolution certifying that its members were expected to work at least 1000 hours per year. Consequently, the written notice further informed the plaintiffs that they were no longer eligible for continued IMRF participation and were given administrative appeal rights.

¶ 14 Plaintiffs timely exercised their right to appeal and submitted through counsel a written argument and supporting documentation. Plaintiffs contended that on or about February 17, 2017, the Williamson County Clerk's office was alerted by an IMRF employee that Williamson County "was (now) required to adopt and pass a *new* resolution for the county commissioners to participate in IMRF" and that "[i]t was at that time Williamson County first became aware the resolution that was active and on file with IMRF since 1987 was no longer sufficient." Plaintiffs argued

that Public Act 99-900 was unconstitutional under article XIII, section 5, of the Illinois Constitution. Plaintiffs further argued that affected IMRF members were not given direct notice of the potential change in eligibility and that the 90-day requirement for a new resolution under section 7-137.2 was ambiguous.

¶ 15 The Fund responded and provided additional information substantiating its efforts to notify individual county board members and the county board itself of Public Act 99-900 being enacted into law. The Fund also allowed plaintiffs to submit supplemental argument.

¶ 16 In March 2018, a hearing was held on plaintiffs' appeal. Plaintiffs and their counsel appeared and presented their position by counsel. The hearing officer decided that "[t]he administrative staff determination terminating the [plaintiffs'] participation in IMRF as of February 28, 2017[,] is hereby affirmed, without deciding the [plaintiffs'] argument with the respect to the constitutionality of Public Act 99-900."

¶ 17 In May 2018, the Fund adopted the recommended decision of the hearing officer. Accordingly, the Fund issued an order affirming the termination of plaintiffs' IMRF participation, effective February 28, 2017, without addressing plaintiffs' argument that Public Act 99-900 was unconstitutional.

¶ 18 In October 2018, plaintiffs filed a two-count amended complaint in Williamson County circuit court. Count I sought administrative review of the Fund's decision. Count II sought a declaration that Public Act 99-900 was unconstitutional under article XIII, section 5, of the Illinois Constitution. The Fund answered the complaint and asked the court to affirm its decision.

¶ 19 In August 2019, the circuit court issued a judgment in plaintiffs' favor. The court entered an order reversing the Fund's decision and finding Public Act 99-900 unconstitutional under article XIII, section 5, of the Illinois Constitution.

¶ 20 The Fund timely appealed the circuit court's judgment directly to this court pursuant to Illinois Supreme Court Rule 302(a) (eff. Oct. 4, 2011). The Fund later filed a motion in this court pursuant to Rule 302(a) seeking an order remanding the matter to the circuit court for compliance with Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006). We allowed the Fund's motion for remand, retained jurisdiction over

the matter, and directed the circuit court to enter an order in compliance with Rule 18.

¶ 21    On November 25, 2019, the circuit court entered an amended judgment and order that again reversed the Fund's decision and directed the Fund to reinstate plaintiffs with "full rights, membership and participation." The court's amended judgment clarified that its ruling was based solely on its determination that section 7-137.2(a) violated the pension protection clause.

¶ 22    More specifically, the circuit court's amended judgment declared

"[Public Act] 99-900 as codified in 40 ILCS 5/7-137.2(a), which prohibits a previously qualified IMRF participant county board member from continued participation in IMRF absent the re-adoption and delivery to IMRF of a resolution within 90 days of the election of a county board member is unconstitutional as violative of the Illinois Constitution, Article 13, Section 5."

The court expressly declined to consider plaintiffs' claim seeking administrative review of the Fund's decision (count I) or the constitutionality of any other part of Public Act 99-900.

¶ 23    This appeal followed.


¶ 24                              II. ANALYSIS

¶ 25    The sole issue for our consideration is whether section 7-137.2(a) of the Pension Code violates article XIII, section 5, of the Illinois Constitution of 1970, commonly referred to as the pension protection clause. It is settled that statutes carry a strong presumption of constitutionality, and this court will uphold a statute as constitutional whenever reasonably possible. *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 16. The party challenging the statute carries the burden to rebut clearly this strong judicial presumption. *Wingert v. Hradisky*, 2019 IL 123201, ¶ 28.

¶ 26    We review *de novo* the constitutionality of a statute because it presents a question of law. *Piccioli v. Board of Trustees of the Teachers' Retirement System*, 2019 IL 122905, ¶ 17. To the extent this appeal requires construction of the Pension

Code, the statutory language is also subject to *de novo* review. *Raab v. Frank*, 2019 IL 124641, ¶ 18.

¶ 27    Section 7-137.2(a) of the Pension Code, enacted by Public Act 99-900 on August 26, 2016, provides:

"An elected member of a county board is not eligible to participate in the Fund with respect to that position unless the county board has adopted a resolution, after public debate and in a form acceptable to the Fund, certifying that persons in the position of elected member of the county board are expected to work at least 600 hours annually (or 1000 hours annually in a county that has adopted a resolution pursuant to subsection (e) of Section 7-137 of this Code). The resolution must be adopted and filed with the Fund no more than 90 days after each general election in which a member of the county board is elected." 40 ILCS 5/7-137.2(a) (West 2016).

¶ 28    The Fund argues that plaintiffs have failed to demonstrate that section 7-137.2(a) is unconstitutional under the Illinois Constitution's pension protection clause. According to the Fund, this court must first decide whether plaintiffs' continued IMRF participation is a benefit of the enforceable contractual relationship resulting from plaintiffs' prior IMRF membership. The Fund contends that even if plaintiffs were previously eligible for IMRF membership their continued IMRF participation is not a guaranteed contractual benefit if they no longer qualify under the applicable requirements. The Fund notes that positions that do not meet the IMRF eligibility requirements are not entitled to IMRF service credit.

¶ 29    Plaintiffs respond that there is no dispute that they qualified for IMRF participation prior to enactment of section 7-137.2(a) and its new process for certifying eligibility of elected county board members. Similarly, plaintiffs would have qualified for continued IMRF participation under the original statutory requirements in effect when they first qualified for IMRF participation. Thus, plaintiffs urge this court to conclude that their continued participation in IMRF is constitutionally protected.

¶ 30    Plaintiffs emphasize that the record contains no evidence and the Fund makes no allegation that plaintiffs failed to continue to qualify for IMRF membership

under the terms of the Pension Code as it existed prior to the enactment of Public Act 99-900. Plaintiffs' IMRF participation was terminated only because of the new requirements in section 7-137.2(a) of the Pension Code. Plaintiffs argue that "[t]his action constitutes a unilateral and unconstitutional change in the 'enforceable contractual relationship' of the parties and the terms of the pension plan in effect at the time the employees became members in the pension system."

¶ 31     This court's jurisprudence on the Illinois Constitution's pension protection clause is well developed. Found in article XIII, section 5, of the Illinois Constitution, the clause provides that

> "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

Our decisions have uniformly construed its plain meaning to protect any benefit of the enforceable contractual relationship arising from membership in one of the pension or retirement systems of the State and any local unit of government or school district from diminishment or impairment. *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 25; *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 45 (*Heaton*); *Kanerva v. Weems*, 2014 IL 115811, ¶ 38.

¶ 32     In other words, "a public employee's membership in a pension system is an enforceable contractual relationship, and the employee has a constitutionally protected right to the benefits of that contractual relationship." *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 29. The constitutional protection is broad because it "protects all of the benefits that flow from the contractual relationship arising from membership in a public retirement system." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 54 (citing *Kanerva*, 2014 IL 115811, ¶ 38). That protection "attach[es] once an individual first embarks upon employment in a position covered by a public retirement system, not when the employee ultimately retires." *Heaton*, 2015 IL 118585, ¶ 46. Effectively, the clause prohibits unilateral legislative action that diminishes or impairs the constitutionally protected benefit. *Matthews*, 2016 IL 117638, ¶ 54 (citing *Kanerva*, 2014 IL 115811, ¶ 40).

¶ 33    In accord with that authority, we agree with plaintiffs that their continued IMRF participation was constitutionally protected from unilateral legislative diminishment or impairment when they became IMRF participants and began accruing the service credits used to calculate a retirement annuity. Respectively, plaintiffs Gentry, Ellis, and Marlo became IMRF participants in December 2004, November 2008, and November 2012.

¶ 34    Notably, the Fund does not dispute that plaintiffs were active and eligible IMRF participants for several years prior to the August 2016 enactment of section 7-137.2(a). Instead, the Fund argues that, if we find that plaintiffs had a protected contractual right to continued IMRF participation, "[s]uch a broad interpretation of the pension protection clause creates absurd results where an individual need only qualify for participation once and then be entitled to future participation for an indefinite amount of time."

¶ 35    The Fund is mistaken. We do not conclude that plaintiffs were entitled to unlimited future IMRF participation for an indefinite time period. Plaintiffs are, however, entitled to constitutional protection of the contractual relationship of their IMRF membership when they began employment. *Carmichael*, 2018 IL 122793, ¶ 26 (citing *Heaton*, 2015 IL 118585, ¶ 46). Thus, as plaintiffs correctly acknowledge, their continued IMRF participation is dependent upon them satisfying the contractual terms for public pension system participation existing at the time of their initial application for membership in IMRF. It is worth repeating that the Fund has never alleged that plaintiffs have at any point failed to satisfy the original requirements for IMRF participation in effect when plaintiffs first became IMRF members.

¶ 36    Contrary to the Fund's assertion, that conclusion is not absurd. Instead, it is entirely consistent with this court's settled pension clause jurisprudence—the original requirements for plaintiffs' IMRF participation cannot be changed unilaterally by the legislature. As we have explained, "once a person commences to work and becomes a member of a public retirement system, any subsequent changes to the Pension Code that would diminish the benefits conferred by members in the retirement system cannot be applied to that person." *Carmichael*, 2018 IL 122793, ¶ 26 (citing *Heaton*, 2015 IL 118585, ¶ 46).

¶ 37    The Fund further argues that, even if this court concludes that plaintiffs' continued participation in IMRF was a benefit entitled to constitutional protection, section 7-137.2(a) is nonetheless constitutional because it does not diminish, impair, or otherwise impact plaintiffs' pension benefits. The Fund posits that this case is fundamentally different than every other case when this court has found a statutory change violated the pension protection clause.

¶ 38    Specifically, the Fund observes that the adoption of section 7-137.2(a), on its own, did not diminish or impair plaintiffs' pension benefits. The Fund asserts that in this court's prior pension clause cases the affected parties had lesser benefits as soon as the applicable statutory changes became effective. Here, in contrast, plaintiffs' benefits on the day section 7-137.2(a) became effective were the same as their benefits before that provision existed. It took an intervening act or failure to act by the Williamson County Board of Commissioners for plaintiffs' pension benefits to be impacted.

¶ 39    Plaintiffs disagree, arguing that this court should conclude that their constitutionally protected right to continued IMRF participation must be governed by the terms in effect when they first became eligible for IMRF participation. Plaintiffs contend that section 7-137.2(a) is an entirely new statutory requirement for IMRF participation that, by definition, did not exist when they began public employment. Plaintiffs also contend that it is irrelevant whether the Williamson County Board of Commissioners failed to adopt a new resolution pursuant to section 7-137.2(a) because that provision cannot be applied to plaintiffs without violating the pension protection clause. Plaintiffs urge this court to conclude that, "[o]nce the plaintiffs met the requirement for IMRF membership and participation, the legislature was prohibited from establishing a new condition for these plaintiffs' IMRF membership."

¶ 40    In our view, plaintiffs' position best comports with our decisions interpreting the pension protection clause in article XIII, section 5. Although the Fund correctly recognizes that many of our prior decisions involved statutory changes that made immediate and direct diminishments to public pension benefits, we observe that that is not the only category of unilateral legislative change prohibited by article XIII, section 5, of the Illinois Constitution.

¶ 41 In fact, "this court has consistently held that the contractual relationship protected by section 5 of article XIII is governed by the actual terms of the contract or pension plan in effect at the time the employee becomes a member of the retirement system." *Matthews*, 2016 IL 117638, ¶ 59; see also *Matthews*, 2016 IL 117638, ¶ 116 (Theis, J., specially concurring, joined by Karmeier, J.) ("Our case law instructs that [the pension protection clause] did create one very simple *de facto* vesting rule: Public employees' rights to benefits are constitutionally protected when they begin their jobs.").

¶ 42 Two decisions from this court illustrate this distinct protection of article XIII, section 5, of the Illinois Constitution that prohibits the legislature from unilaterally imposing new limitations or requirements on public pension benefits that did not exist when the public employee was hired. The first decision, *Buddell v. Board of Trustees*, 118 Ill. 2d 99 (1987), involved a state university employee, Dr. William Buddell, who sought to purchase military service credit from the State University Retirement System. When Dr. Buddell started his university employment, section 15-113 of the Pension Code (Ill. Rev. Stat. 1969, ch. 108½, ¶ 15-113(i)) allowed employees to purchase service credit for time spent in military service without limitations. The provision was later amended, in relevant part, to allow the credit only if the eligible member applied for the credit prior to September 1, 1974 (Ill. Rev. Stat. 1975, ch. 108½, ¶ 15-113(i)). *Buddell*, 118 Ill. 2d at 100-01.

¶ 43 Dr. Buddell applied to the State University Retirement System to purchase military service credit in 1983, but his application was denied because he failed to comply with the statutory deadline contained in the amended section 15-113 of the Pension Code. On administrative review, the circuit court reversed after concluding that the amendment to section 15-113 adding that deadline violated article XIII, section 5, of the Illinois Constitution because there was no time limitation on military service credit when Dr. Buddell became a participant in the State University Retirement System. *Buddell*, 118 Ill. 2d at 101-02.

¶ 44 On direct review in this court, we agreed with the circuit court that the amendment adding the deadline was unconstitutional under the Illinois Constitution's pension protection clause. After reviewing the historical development of the pension protection clause and the contract principles underlying its protections, we emphasized that when Dr. Buddell became a public employee,

the Pension Code allowed him to purchase military service credit. We concluded that "[t]his right to purchase additional credit became a contractual right under article XIII, section 5, of our 1970 Constitution," and "the legislature cannot divest [Dr. Buddell] of these rights." *Buddell*, 118 Ill. 2d at 105-06.

¶ 45　　　More recently, in *Carmichael*, 2018 IL 122793, we again considered a unilateral legislative change to the Pension Code that modified a public pension benefit that was available when the public employee was hired. Specifically, this court reviewed the General Assembly's amendments to the Pension Code that eliminated the ability of the plaintiffs to purchase service credit during a leave of absence to work for a local union. In concluding that the pension protection clause applied to that change, we explained that it was

> "undisputed that, when plaintiffs began their employment and became members of the public pension system, they had the statutory right to count time spent on leave of absence with their local labor organization in their annuity calculations. The benefit plaintiffs seek to enforce is their right that existed in the Pension Code before the amendments of Public Act 97-651 to purchase, if they so choose, service credit during a leave of absence in the future to work for a local union. If that benefit is part of the contractual relationship resulting from membership in the public retirement system, it is protected by the pension clause even if the participant has not yet exercised the option before the amendments of the Act took effect." *Carmichael*, 2018 IL 122793, ¶ 27 (citing *Buddell*, 118 Ill. 2d at 105-06).

¶ 46　　　We further concluded in *Carmichael* that the statutory right to earn service credit on a leave of absence from a public employer to work for a local labor organization was a "benefit" within the meaning of the pension protection clause. Explaining our conclusion, this court observed that each of the plaintiffs was either employed in a public position when the option to earn service credit was a benefit or started public employment and joined the retirement system after the benefit was already in place. We held in *Carmichael* that the amendment to the Pension Code was "unconstitutional to the extent that it eliminated as a pension benefit for current participants the ability to earn union service credit previously bestowed by the legislature." *Carmichael*, 2018 IL 122793, ¶ 32.

¶ 47    We agree with plaintiffs that *Buddell* and *Carmichael* support their argument that section 7-137.2(a) of the Pension Code similarly violates article XIII, section 5, of the Illinois Constitution. The legislature's unilateral decision to create section 7-137.2(a) effectively imposes a new requirement for continued IMRF participation that did not exist when plaintiffs began their public employment. The Fund does not contest plaintiffs' assertion that they would qualify for continued IMRF participation but for section 7-137.2(a)'s new requirement that all county boards certify within 90 days of each general election that their county board members are required to work sufficient hours to meet the applicable hourly standard.

¶ 48    As plaintiffs argue, their continued IMRF participation is relevant to the calculation of the applicable service credits and annuity calculation. Under the Pension Code, an individual qualifies for an IMRF retirement annuity if, on the date of retirement or separation from public employment, the individual had at least eight years of creditable service. See 40 ILCS 5/7-141(a)(4) (West 2012). In turn, the calculation of retirement annuity benefit is based on a formula that considers the number of service credits of the employee and the employee's final earnings on the date of retirement. See 40 ILCS 5/7-142 (West 2012). Generally, the greater the number of years of recognized service credit and the greater the member's final earnings, the larger the member's annuity benefit. Obviously, the termination of plaintiffs' continued IMRF participation, effective February 28, 2017, predicated on the new requirements of section 7-137.2(a), decreased their service credits and negatively impacted their annuity benefit calculation.

¶ 49    The Fund does not argue, and has never argued, that any of the plaintiffs failed to meet the original requirements for continued IMRF participation that were effective when they started their public employment. It is those original requirements, effective when plaintiffs became members of IMRF, that govern this dispute. See *Matthews*, 2016 IL 117638, ¶ 59 (collecting cases for the proposition that article XIII, section 5, of the Illinois Constitution protects a contractual relationship governed by the actual terms of the contract or pension plan in effect when the employee becomes a member of the public retirement system).

¶ 50    Necessarily, then, we reject the Fund's contention that section 7-137.2(a) of the Pension Code does not constitute a new requirement for plaintiffs' continued IMRF participation that diminished or impaired their protected public pension benefits.

We emphasize that in this case there is no dispute that plaintiffs satisfied the original IMRF eligibility requirements in effect when they became IMRF members. The only reason their IMRF participation was terminated in February 2017 was the failure of the Williamson County Board of Commissioners to pass the service-hours resolution within the requisite 90 days, as required by section 7-137.2(a). This *newly created* requirement in the Pension Code did not exist when plaintiffs began their public employment and participation in IMRF. Thus, it cannot be constitutionally applied to plaintiffs. *Buddell*, 118 Ill. 2d at 104-06; *Carmichael*, 2018 IL 122793, ¶ 32; *Matthews*, 2016 IL 117638, ¶ 59.

¶ 51                                III. CONCLUSION

¶ 52        For the reasons stated, we affirm the circuit court's judgment holding unconstitutional section 7-137.2 of the Pension Code (40 ILCS 5/7-137.2(a) (West 2016)) under article XIII, section 5, of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5) and its order directing the Fund to reinstate plaintiffs with full rights, membership, and participation.

¶ 53        Circuit court judgment affirmed.