2023 IL App (2d) 220198
No. 2-22-0198
Opinion filed February 7, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE ARLINGTON HEIGHTS POLICE PENSION FUND, THE AURORA POLICE PENSION FUND, THE CHAMPAIGN POLICE PENSION FUND, THE CHICAGO HEIGHTS POLICE PENSION FUND, THE CHICAGO RIDGE POLICE PENSION FUND, THE CICERO POLICE PENSION FUND, THE De KALB POLICE PENSION FUND, THE ELGIN POLICE PENSION FUND, THE ELMHURST POLICE PENSION FUND, THE EVANSTON POLICE PENSION FUND, THE MOKENA POLICE PENSION FUND, THE PALOS HEIGHTS POLICE PENSION FUND, THE RANTOUL POLICE PENSION FUND, THE VILLA PARK POLICE PENSION FUND, THE WOOD DALE POLICE PENSION FUND, THE WOODRIDGE POLICE PENSION FUND, THE MAYWOOD FIREFIGHTERS' PENSION FUND, THE PLEASANTVIEW FIREFIGHTERS' PENSION FUND, THOMAS HENDERSON, SCOTT MAY, LAWRENCE SUTTLE, DANIEL HOFFMAN, PATRICK SIMONS, PATRICK KELLY, GENE KEELER, STEVEN ANKARLO, LEE MORRIS, DEAN MANN, PAUL MOTT, JIM KAYES, JAMES ROSCHER, THOMAS QUIGLEY, VICTOR VALDEZ, THOMAS TUREK, WILLIAM CZAJKOWSKI, DAVID DELANEY, RICHARD WEIKAL, DAVID FLOWERS SR., ROBERT MILLER, DAN RANKOVICH, AARON WERNICK, TIMOTHY SCHOOLMASTER, DAVE LOEHMAN, MIKE HERBERT, MATTHEW | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |

BROSS, MICHAEL TITTLE, SCOTT )
SHROEDER, BENJAMIN DEFILIPPIS, )
JORDAN ANDERSON, DENNIS KOLETSOS,)
WILLIAM BODNAR, and FRED )
MALAYTER, )
                              )
      Plaintiffs-Appellants, )
                              )
v. ) No. 21-CH-55
                              )
JAY ROBERT "J.B." PRITZKER, in His )
Official Capacity as Governor of the State of )
Illinois; CHRISTOPHER B. MEISTER, in His )
Official Capacity as Executive Director of the )
Illinois Finance Authority; DANA POPISH )
SEVERINGHAUS, in Her Official Capacity as )
Acting Director of Insurance; )
THE BOARD OF TRUSTEES )
FOR THE POLICE OFFICERS' PENSION )
INVESTMENT FUND; and THE BOARD )
OF TRUSTEES FOR THE FIREFIGHTERS' )
PENSION INVESTMENT FUND, ) Honorable
                              ) Robert K. Villa,
      Defendants-Appellees. ) Judge, Presiding.

PRESIDING JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs who are individual active- and retired-beneficiary representatives from multiple suburban and downstate police and firefighter pension funds appeal from the trial court's order granting summary judgment in favor of defendants. We affirm.

¶ 2                            I. BACKGROUND

¶ 3    In 2019, defendant Governor Jay Robert "J.B." Pritzker signed into law Public Act 101-610 (eff. Jan. 1, 2020) (Act) that, *inter alia*, amended portions of the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2018)). Prior to the Act, there were approximately 650 local police and firefighter pension funds for municipalities with populations between 5000 and 500,000.

These funds were governed by five-member boards comprised of two appointed members, two members elected by active members, and one member elected by other beneficiaries (*i.e.*, retirees). *Id.* §§ 3-128, 4-121. Each board was responsible for determining the retirement, disability, and death benefits payable to fund members and other beneficiaries. *Id.* §§3-148, 4-139. Member and employer contribution requirements were set in the Pension Code. See *id.* §§ 3-125, 3-125.1, 4-118, 4-118.1. Employers were required to make contributions that, added to the employee contributions, were sufficient to cover the fund's "normal cost" (the amount necessary to pay the additional benefits earned by current services) and to fund 90% of its actuarial liabilities by 2040, paying down unfunded liabilities by a specified amount each year. *Id.* §§ 3-125, 4-118.

¶ 4    Among other things, the Act consolidated all existing relevant police and firefighter pension fund assets into two statewide police and firefighter pension investment funds, one for police and one for firefighters. The local funds were to transfer custody of and investment responsibility for their assets to the appropriate investment fund, which was to invest and administer the pooled assets of the funds collectively. However, each local fund retained a separate "account" such that the "operations and financial condition of each participating pension fund account shall not affect the account balance of any other participating pension fund." 40 ILCS 5/22B-118(c), 22C-118(c) (West 2020). The returns on the investments were to be "allocated and distributed pro rata among each participating pension fund account in accordance with the value of the pension fund assets attributable to each fund." *Id.* The statewide investment fund boards were to be comprised of nine members: three officers or executives from participating municipalities, three active participants of the local funds (who were elected by active participants), two beneficiaries from the local funds (elected by beneficiaries), and one member recommended by the Illinois Municipal League (appointed by the governor and confirmed by the

Senate). *Id.* §§ 22B-115(b)(1)-(4), 22C-115(b)(1)-(4). The Act provided that the local funds retained "exclusive authority to adjudicate and award" retirement and other benefits, and the investment funds "shall not have the authority to control, alter, or modify, or the ability to review or intervene in, the proceedings or decisions" of the local funds. *Id.* §§ 3-124.3, 4-117.2. In addition, the Act authorized the Illinois Finance Authority to lend up to $7.5 million to each investment fund that, if borrowed, would be repaid with interest. *Id.* §§ 22B-120(h), 22C-120(h).

¶ 5      Plaintiffs filed a three-count complaint seeking declaratory, injunctive, and other relief and a finding that the Act violated article XIII, section 5, of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5), commonly known as the pension protection clause (count I), and/or article I, section 16 of the Illinois Constitution (Ill. Const. 1970, art. I, § 16), commonly known as the contracts clause (count II), and/or article I, section 15 of the Illinois Constitution (Ill. Const. 1970, art. I, § 15), commonly known as the takings clause (count III). The trial court granted certain of defendants' motions to dismiss; all of the named funds were dismissed as plaintiffs for lack of standing, and count II was dismissed against the remaining plaintiffs for failing to state a cause of action under the contracts clause. These rulings are not challenged on appeal. The trial court later entered summary judgment on counts I and III in favor of defendants. It is from this grant of summary judgment that this appeal arises.

¶ 6                                    II. ANALYSIS

¶ 7      Plaintiffs contend that the trial court erred in granting summary judgment in favor of defendants. Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). A triable issue that will preclude the entry of summary judgment exists

where the material facts are disputed or where reasonable persons might draw different inferences from undisputed facts. *G.I.S. Venture v. Novak*, 2014 IL App (2d) 130244, ¶ 8. In determining whether a genuine issue of material fact exists, we must construe the materials of record strictly against the movant and liberally in favor of the nonmoving party. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31 (2006). While the use of summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *G.I.S. Venture*, 2014 IL App (2d) 130244, ¶ 8. A grant of summary judgment is reviewed *de novo*. *Harlin*, 369 Ill. App. 3d at 31.

¶ 8        Plaintiffs first argue that the trial court erred in granting summary judgment on count I, where the court found that the Act did not violate the pension protection clause, which states: "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. Our supreme court has held that "the clause means precisely what it says: 'if something qualifies as a benefit of the enforceable contractual relationship resulting from membership in one of the State's pension or retirement systems, it cannot be diminished or impaired.' " *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 45 (quoting *Kanerva v. Weems*, 2014 IL 115811, ¶ 38). Once someone begins work and becomes a member of a public retirement system, "any subsequent changes to the Pension Code that would diminish the benefits conferred by membership in the retirement system cannot be applied to that individual." *Id.* ¶ 46. The protection of the pension protection clause "is broad because it 'protects *all of the benefits* that flow from the contractual relationship arising from membership in a public retirement system.' " (Emphasis added.)

*Williamson County Board of Commissioners v. Board of Trustees of the Illinois Municipal Retirement Fund*, 2020 IL 125330, ¶ 32 (quoting *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 54).

¶ 9    Plaintiffs first assert that the Act violates the pension protection clause because it impairs the members' rights to vote in the election of local pension board members "and to have that local board control and invest local pension funds." According to plaintiffs, voting rights are a benefit that flows from the contractual relationship and, therefore, cannot be changed.

¶ 10    Plaintiffs are correct that the clause's protections extend beyond the pension payment itself. For example, in *Williamson County*, the plaintiffs, all elected members of the Williamson County Board of Commissioners, had satisfied the requirements of the Pension Code to participate in the Illinois Municipal Retirement Fund (IMRF). The legislature subsequently amended the Pension Code to add a requirement that altered the IMRF eligibility for elected county board members, requiring county board adoption of an IMRF participation resolution within 90 days of each election when a member of the county board is elected or reelected. *Williamson County*, 2020 IL 125330, ¶ 9. The plaintiffs' participation in IMRF was terminated when Williamson County failed to adopt such a resolution in a timely manner.

¶ 11    In finding the amendment to the Pension Code unconstitutional, our supreme court noted that "immediate and direct diminishments to public pension benefits *** is not the only category of unilateral legislative change prohibited by article XIII, section 5, of the Illinois Constitution." *Id.* ¶ 40. To "illustrate this distinct protection of article XIII, section 5, of the Illinois Constitution that prohibits the legislature from unilaterally imposing new limitations or requirements on public pension benefits that did not exist when the public employee was hired" (*id.* ¶ 42), the court reviewed two cases in which the court had previously found improper new requirements placed on

pension benefits: (1) *Buddell v. Board of Trustees*, 118 Ill. 2d 99 (1987) (involving changes to employees' right to purchase service credit for time spent in military service, without limitations), and (2) *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793 (involving amendments to the Pension Code that eliminated the ability of the plaintiffs to purchase service credit during a leave of absence to work for a local union). Noting that "the calculation of retirement annuity benefit is based on a formula that considers the number of service credits of the employee and the employee's final earnings on the date of retirement," the court concluded that the termination of the plaintiffs' continued participation in IMRF, predicated on the new statutory requirements, "decreased their service credits and negatively impacted their annuity benefit calculation." *Williamson County*, 2020 IL 125330, ¶ 48. Thus, the amendment constituted a new requirement for the plaintiffs' continued IMRF participation and it "diminished or impaired their protected public pension benefits." *Id.* ¶ 50.

¶ 12    The benefits at issue in *Williamson County*, *Buddell*, and *Carmichael* were benefits that affected the participants' ability to continue participation (*Williamson County*) or their ability to increase their service credits (*Buddell* and *Carmichael*), thereby negatively affecting the calculation of their eventual benefit payments. These are the types of benefits "that flow from the contractual relationship arising from membership in a public retirement system." (Internal quotation marks omitted.) *Id.* ¶ 32. These benefits directly impacted the participants' eventual pension benefit.

¶ 13    As our supreme court has said:

"The benefits protected by the pension protection clause include those benefits attendant to membership in the State's retirement system, such as subsidized health care, disability and life insurance coverage, and eligibility to receive a retirement annuity and survivor

benefits (see *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 36; *Kanerva*, 2014 IL 115811, ¶¶ 39, 41), along with the right to purchase optional service credit in the state pension system for past military service (see *Buddell v. Board of Trustees*, 118 Ill. 2d 99, 105-06 (1987))." *Carmichael*, 2018 IL 122793, ¶ 25.

¶ 14     We determine that the ability to vote in the election of local pension board members and to have that local board control and invest local pension funds is not of the same nature and essentiality as the ability to participate in the fund, accumulate credited time, or receive health care, disability, and life insurance coverage. Voting for the local board is, at best, ancillary to a participant's receipt of the pension payment and other assets. The local boards were entrusted with investing the contributions so that payments could be made to participants. However, choosing who invests funds does not guarantee a particular outcome for benefit payments. The local boards also did not have any say in the actual method of funding; contribution requirements were set in the Pension Code. See 40 ILCS 5/3-125, 3-125.1, 4-118, 4-118.1 (West 2018). Our supreme court has held that the pension protection clause does not control the manner in which state and local governments fund their pension obligations. See *Jones v. Municipal Employees' Annuity and Benefit Fund of Chicago*, 2016 IL 119618, ¶ 38. Voting for the board members who deal with the funding of the pension fund is no more than a procedure that may have some impact on the funding; it is not a direct impact on the payment of benefits. Where the methods of funding a retirement system are not governed by the pension protection clause, we cannot say that the right to choose who invests the funds of the system is more of a protected benefit. Thus, we conclude that the trial court did not err in granting summary judgment on this basis.

¶ 15     Plaintiffs next argue that the trial court failed to consider their argument that the Act diminishes and impairs their pension benefits because it "requires the local funds to pay for the

newly-created and consolidated funds' startup costs, administration, and operation, as well as transition costs of up to $15,000,000 plus interest." Plaintiffs make no argument as to how the requirement to pay for the administration of the funds would in any way impair or diminish the payment of their pension benefits. The local funds are already required to pay the costs of administration of the local funds, and plaintiffs do not cite any evidence to show that the costs of administration of the new funds, even including startup costs, would be any greater. The quotation referencing $15 million plus interest is misleading, at best. Section 22B-120(h) of the Act does not require the borrowing, let alone spending, of $15 million for such expenses. It merely authorizes the Illinois Finance Authority to lend up to $7.5 million to each investment fund that, *if borrowed*, would be repaid with interest. See 40 ILCS 5/22B-120(h), 22C-120(h) (West 2020). We further note that the level of benefit payments is not determined by the level of funding in the fund. Member and employer contribution requirements are set in the Pension Code; if more money were to be required to pay the already-established benefits, future contribution requirements could be amended. Plaintiffs present no evidence that the Act actually reduced the funding available for the payment of benefits.

¶ 16    We find no error in the trial court's grant of summary judgment in defendants' favor as to count I and grant plaintiffs no relief.

¶ 17    Plaintiffs next contend that the Act violates the takings clause of the Illinois Constitution. Article I, section 15 of the Illinois Constitution states: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Ill. Const. 1970, art. I, § 15.

¶ 18    Plaintiffs spend a great deal of their argument attacking the trial court's conclusion, based on the case of *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62 (2008), that a takings

clause claim must be tied to real property. However, we are not bound by the reasoning of the trial court and may affirm on any basis presented in the record. See *People ex rel. Alvarez v. $59,914 United States Currency*, 2022 IL 126927, ¶ 24. We need not address the issue of real property, as plaintiffs failed to establish the existence of an elemental requirement—that of "private property." As we stated in our pension protection clause analysis (*supra* ¶ 14*)*, while plaintiffs have a constitutional right to receive pension benefits, they do not have a property right in any particular assets or level of funding. Plaintiffs are individual active and retiree/beneficiaries of the local funds: they have no right to the investments held by the funds; rather, they are entitled only to present or future payments from the funds. No plaintiff has any right to direct the investment of the monies held by the funds or direct that they receive any different course of payments (either in amount or frequency) beyond that established by statute and the funds. Simply put, plaintiffs do not own the funds that the Act requires to be transferred to the new statewide police and firefighter pension investment funds. The Act does nothing more than require one type of government-created pension fund to transfer assets to another type of government-created pension fund. Plaintiffs' rights to receive benefit payments are not impacted by these transfers. As the "property" at issue here is not the private property of the plaintiffs, the takings clause is neither relevant nor applicable here. Thus, we find no error in the trial court's grant of summary judgment on count III.

¶ 19                                     III. CONCLUSION

¶ 20     For these reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 21     Affirmed.

*Arlington Heights Police Pension Fund v. Pritzker*, **2023 IL App (2d) 220198**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 21-CH-55; the Hon. Robert K. Villa, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel F. Konicek, and Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General (Jane Elinor Notz, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), Richard F. Friedman and Langdon D. Neal, of Neal & Leroy, LLC, Michael A. Scodro and Brett E. Legner, of Mayer Brown LLP, and Joseph M. Burns, Taylor E. Muzzy, and David Huffman-Gottschling, of Jacobs, Burns, Orlove, and Hernandez LLP, all of Chicago, for appellees.<br><br>Paul Denham and Jill D. Leka, of Clark Baird Smith LLP, of Rosemont, for *amicus curiae* Illinois Municipal League.<br><br>Joseph Weishampel, Margaret Angelucci, and Jerry Marzullo, of Asher, Gittler & D'Alba, Ltd., of Chicago, for *amicus curiae* Associated Firefighters of Illinois. |