**2024 IL 129471**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 129471)

THE ARLINGTON HEIGHTS POLICE PENSION FUND *et al.*, Appellants, v. JAY ROBERT "J.B." PRITZKER, Governor, *et al.*, Appellees.

*Opinion filed January 19, 2024.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Neville, Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiffs filed a complaint against defendants in the circuit court of Kane County seeking, *inter alia*, a finding that Public Act 101-610 (eff. Jan. 1, 2020) (Act), which amended portions of the Illinois Pension Code (40 ILCS 5/1-101 *et. seq.* (West 2020)), violated article XIII, section 5, of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5), commonly known as the pension protection clause,

and/or article I, section 15, of the Illinois Constitution (Ill. Const. 1970, art. I, § 15), commonly known as the takings clause. The circuit court granted summary judgment in favor of defendants. The appellate court affirmed. 2023 IL App (2d) 220198, ¶ 20. For the following reasons, we also affirm.

¶ 2                              BACKGROUND

¶ 3        On January 1, 2020, Public Act 101-610 became effective and amended, in pertinent part, portions of the pension code to consolidate all applicable local police and firefighter pension fund assets into two statewide pension investment funds, one for police and the other for firefighters. Pursuant to the Act, the local pension funds were required to transfer custody and investment responsibility for their fund assets to the respective statewide funds, which are now tasked with collectively investing and administering the pooled assets. The Act provided a transition period that ended on June 30, 2022, for the transfer of securities, assets, and the investment function from the local funds to the statewide investment funds. See 40 ILCS 5/22B-120, 22C-120 (West 2020).

¶ 4        Under the Act, each local fund retains a separate account in the respective statewide fund. Those assets are dedicated solely to paying benefits to the local fund's members and to covering operating expenses. *Id.* §§ 1-109; 22B-118(c), (e); 22C-118(c), (e). The Act specifies that the "operations and financial condition of each participating pension fund account shall not affect the account balance of any other participating pension fund." *Id.* §§ 22B-118(c), 22C-118(c). The returns on the investments in the statewide funds are then "allocated and distributed pro rata among each participating pension fund account in accordance with the value of the pension fund assets attributable to each fund." *Id.*

¶ 5        The purpose of the Act is "to streamline investments and eliminate unnecessary and redundant administrative costs, thereby ensuring more money is available to fund pension benefits for the beneficiaries of the transferor pension funds." *Id.* §§ 22B-114, 22C-114. The two investment fund boards created by the Act are composed of nine members: three officers or executives from participating municipalities, three active participants of the local funds who are elected by active

- 2 -

participants, two beneficiaries [1] from the local funds who are elected by beneficiaries of the funds, and one member recommended by the Illinois Municipal League who is appointed by the governor and confirmed by the Senate. *Id.* §§ 22B-115(b), 22C-115(b). In addition, the Act authorizes the Illinois Finance Authority (IFA) to lend money, if requested by the local funds, to pay the necessary transition costs to the new statewide funds. *Id.* §§ 22B-120(h), 23C-120(h). Any such loans are to be repaid with interest. *Id.*

¶ 6        There are approximately 650 local police and firefighter pension funds for municipalities in Illinois with populations between 5000 and 500,000, and the Act does not eliminate any of them. See *id.* §§ 3-103, 4-103. These local funds continue to be governed by five-member boards composed of two appointed members, two members elected by active members, and one member elected by and from the beneficiaries. *Id.* §§ 3-128, 4-121. The Act specifically provides that these local boards retain exclusive authority to adjudicate and award retirement and other benefits. The new statewide investment funds "shall not have the authority to control, alter, or modify, or the ability to review or intervene in, the proceedings or decisions" of the local pension boards. *Id.* §§ 3-124.3, 4-117.2. Therefore, the enactment of the Act had no impact on the local pension boards' responsibility to determine the retirement, disability, and death benefits payable to fund members and other beneficiaries.

¶ 7        In February 2021, plaintiffs, 36 individual active and retired beneficiary members from a small number of suburban and downstate police and firefighter pension funds, filed a three-count complaint against Governor Jay Robert "J.B." Pritzker; Christopher Meister, executive director of the IFA; Dana Severinghaus, acting director of the Illinois Department of Insurance; the Board of Trustees for the Police Officers' Pension Investment Fund; and the Board of Trustees for the Firefighters' Pension Investment Fund. Plaintiffs sought declaratory, injunctive, and other relief, including a finding that the Act violated the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5) (count I) and/or

---

[1]The fund board for local police has two members directly from the population of beneficiaries; the fund board for firefighters has one beneficiary member and one member recommended by the statewide labor organization representing firefighters from at least 85 municipalities, who is then appointed by the governor and confirmed by the Senate. See *id.* § 22C-115(b)(3), (5).

the Illinois Constitution's contracts clause (*id.* art. I, § 16) (count II) and/or the Illinois Constitution's takings clause (*id.* § 15) (count III).[2]

¶ 8    Plaintiffs' complaint alleged that the Act diminishes and impairs their pension benefits because, (1) prior to the Act, the local funds could "exclusively manage and control their investment expenditures and income"; (2) their "voting power and thereby an effective say in the selection of investment managers, investments, risks, rates of return, costs and expenses" was diluted by the participation of members of other local funds; and (3) the local funds must bear the costs associated with the Act's transition process, including repayment of any IFA transition loans.

¶ 9    On cross-motions for summary judgment, the circuit court entered judgment in favor of defendants and against plaintiffs.[3] As to count I, the circuit court found that precedent from this court instructs that the "benefits" protected by the pension protection clause are limited to those that affect the value of a member's pension benefit. The circuit court found the Act did not violate the clause because plaintiffs were not denied a "benefit" that could be tied to a change in the value of their retirement payments. As to count III, plaintiffs' takings clause claim, the circuit court found that, because the clause applies only to government action against real property, which is not at issue here, the Act did not implicate that constitutional provision.

¶ 10    On appeal, plaintiffs only challenged the circuit court's ruling as to counts I and III of the complaint. 2023 IL App (2d) 220198, ¶ 5. Concerning count I, the appellate court rejected plaintiffs' contention that voting rights are protected benefits under the pension protection clause. *Id.* ¶ 14. The court found that benefits outside of pension payments that have been held to constitute benefits for purposes of the clause are generally only those that affect a participant's continued participation in a pension system or their ability to increase their service credits, thereby affecting the calculation of eventual benefit payments. *Id.* ¶ 12. The

---

[2]The complaint also named as plaintiffs 18 local police or firefighter pension funds. The circuit court dismissed these plaintiffs for lack of standing. This ruling was not challenged in the appellate court, nor is it raised in this court.

[3]Prior to the filing of plaintiffs' countermotion for summary judgment, the circuit court dismissed count II of the complaint after finding that plaintiffs failed to state a cause of action under the contracts clause.

appellate court concluded that the ability to vote in elections for local pension board members is not such a benefit, nor is the ability to have local board members control and invest pension funds. *Id.* ¶ 14.

¶ 11     The appellate court also rejected plaintiffs' argument that the Act impairs and diminishes their benefits by requiring local funds to pay startup and administrative costs, as well as transition costs, for the new statewide pension investment funds. *Id.* ¶ 15. The court found that plaintiffs failed to explain how such costs impair or diminish payment of their benefits. *Id.* Additionally, the court noted that the Act does not require the local funds to borrow money to pay for the costs or for them to spend any specific amount. *Id.*

¶ 12     As to count III, the appellate court held that, because plaintiffs have no property right in any particular assets or level of funding and are entitled only to present or future payments from the funds, they could not establish the private property requirement for their takings clause claim. *Id.* ¶ 18. The court concluded that plaintiffs do not own the funds that are to be transferred to the new statewide funds. *Id.*

¶ 13     For these reasons, the appellate court held that the circuit court correctly ruled that summary judgment in defendants' favor was appropriate on counts I and III of the complaint. *Id.* ¶ 20.

¶ 14     This court granted plaintiffs' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). This court also allowed the Illinois Municipal League and the Associated Firefighters of Illinois leave to file *amicus curiae* briefs in support of defendants' position. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 15                                    ANALYSIS

¶ 16     We first address plaintiffs' contention that the circuit court erred in granting defendants' motion for summary judgment because the Act violates the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5). Plaintiffs assert that the Act does not conform to the requirements of this clause because it impairs the rights of members to vote in the election of local police and

firefighter pension boards and to have those boards control and invest the local pension funds.

¶ 17 Summary judgment is warranted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). By filing cross-motions for summary judgment, the parties invite the court to decide the questions presented as a matter of law. *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund of Chicago*, 2018 IL 122793, ¶ 21. We apply a *de novo* standard of review to summary judgment rulings. *Id.*

¶ 18                                  I. Pension Protection Clause

¶ 19 Article XIII, section 5, of the Illinois Constitution provides that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefit of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

¶ 20 This clause of our constitution has been construed by this court on numerous occasions. We have repeatedly held that the pension protection clause means precisely what it says: "if something qualifies as a benefit of the enforceable contractual relationship resulting from membership in one of the State's pension or retirement systems, it cannot be diminished or impaired." *Kanerva v. Weems*, 2014 IL 115811, ¶ 38; *id.* ¶ 40 (holding that subsidized health care provided to state employees was a benefit of membership in a state retirement system protected by the pension protection clause). The protections afforded to pension benefits by article XIII, section 5, attach once an individual first embarks upon employment in a position covered by a public retirement system, not when the employee ultimately retires. *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 46. Those benefits therefore cannot be later unilaterally diminished or eliminated by the legislature. *Id.* ¶ 46 n.12.

¶ 21 Accordingly, once an individual begins work and becomes a member of a public retirement system, any subsequent changes to the Pension Code that would diminish the benefits conferred by membership in the retirement system cannot be

applied to that individual. *Id.* ¶ 46. "The primary purpose of article XIII, section 5, was to eliminate any uncertainty surrounding the payment of public pension benefits and to clarify that state and local governments were obligated to provide pension benefits to their employees." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 57.

¶ 22    This court has further explained that the pension protection clause " 'protects all of the benefits that flow from the contractual relationship arising from membership in a public retirement system.' " *Williamson County Board of Commissioners v. Board of Trustees of the Illinois Municipal Retirement Fund*, 2020 IL 125330, ¶ 32 (quoting *Matthews*, 2016 IL 117638, ¶ 54). The benefits protected include "those benefits attendant to membership in the State's retirement system, such as subsidized health care, disability and life insurance coverage, and eligibility to receive a retirement annuity and survivor benefit [citations], along with the right to purchase optional service credit in the state pension system for past military service." *Carmichael*, 2018 IL 122793, ¶ 25.

¶ 23    Plaintiffs claim that the lower courts failed to appreciate this precedent and the breadth of the phrase "any benefit" contained in our pension protection clause. Plaintiffs argue that their voting rights are impacted by the Act and that voting rights are a benefit that cannot be altered. They assert that prior to the adoption of the Act they had the right to vote and exercise greater control over locally managed boards and pension funds. The Act, according to plaintiffs, "substantially impacted and diluted" their voting rights and their rights to control the management of the funds. Consequently, plaintiffs claim it was erroneous for the lower courts to find that these rights were not the kind of benefits protected by our constitution.

¶ 24    In support of this argument, plaintiffs rely heavily upon *Williamson County*. There, the plaintiffs were elected members of the Williamson County Board of Commissioners and had satisfied the requirements of the Pension Code to participate in the Illinois Municipal Retirement Fund (IMRF). *Williamson County*, 2020 IL 125330, ¶ 5. The Pension Code was subsequently amended to add a requirement for a county board to adopt an IMRF participation resolution within 90 days of each election when a member of the county board is elected or reelected. *Id.* ¶ 8. The Williamson County Board failed to adopt such a resolution within the

required time frame, and the plaintiffs' participation in IMRF was terminated. *Id.* ¶ 12.

¶ 25    This court found that the amendment to the Pension Code was unconstitutional because the legislature's unilateral decision to create the provision contained in section 7-137.2(a) (40 ILCS 5/7-137.2(a) (West 2016)) imposed a new requirement for continued IMRF participation that did not exist when the plaintiffs began their public employment. *Williamson County*, 2020 IL 125330, ¶ 47. The defendants did not contest the plaintiffs' assertion that they would qualify for continued participation in the fund but for the new requirement that all county boards certify within 90 days of each general election that their county board members are required to work sufficient hours to meet the applicable hourly standard. *Id.*

¶ 26    Plaintiffs' reliance on *Williamson County* is misplaced. There, the newly created requirement in the Pension Code could eliminate the monetary benefits of members and did not exist when the plaintiffs began their public employment and participation in IMRF. Therefore, in marked contrast to the instant case, the constitutional violation in the new legislation in *Williamson County* was specifically tied to its effect of eliminating monetary benefits for existing members.

¶ 27    Generally, as the appellate court below recognized, the benefits outside of pension payments that have been found to constitute benefits for purposes of the pension protection clause are those that affect a participant's ability to continue participation or increase service credits, thereby negatively affecting calculation of eventual benefit payments. See, *e.g.*, *Carmichael*, 2018 IL 122793, ¶ 65 (holding that amendment to the Pension Code that eliminated the ability of the plaintiffs to purchase service credit during a leave of absence to work for a local union was an improper new requirement placed on pension benefits); *Buddell v. Board of Trustees*, *State University Retirement System*, 118 Ill. 2d 99, 106-07 (1987) (holding that change to employees' right to purchase optional service credit for time spent in military service was an improper new requirement placed on pension benefits). In *Carmichael*, we also listed, as examples of the benefits protected by the pension protection clause, "subsidized health care, disability and life insurance coverage, and eligibility to receive a retirement annuity and survivor benefits." *Carmichael*, 2018 IL 122793, ¶ 25.

¶ 28    In contrast, the ability to vote in elections for local pension board members is not such a constitutionally protected benefit, nor is the ability to have local board members control and invest pension funds. See *Kanerva*, 2014 IL 115811, ¶ 48 (holding that the pension protection clause was aimed at protecting the right to receive the promised retirement benefits, not the adequacy of the funding to pay for them); *McNamee v. State*, 173 Ill. 2d 433, 444 (1996) (holding that the pension protection clause does not create a contractual basis for participants to expect a particular level of funding but only a contractual right that they would receive the money due them at the time of their retirement).

¶ 29    It is axiomatic that, if plaintiffs have no constitutional right in how their local pension funds are funded or the adequacy of that funding, they similarly have no constitutional right regarding who invests local fund assets. The Act does not change plaintiffs' right to elect members of their local funds' boards or the local boards' authority to determine the amount of benefits plaintiffs are entitled to receive. It only changes the local boards' power to invest the assets of the local funds. Simply put, the 2020 amendment to the Pension Code has no impact on plaintiffs receiving their promised monetary benefits.

¶ 30    Plaintiffs further argue that the Act impairs and diminishes their benefits in violation of the pension protection clause by requiring local funds to pay start-up, administration, and operation costs for the new funds, plus interest if any amount is borrowed from the IFA. Plaintiffs argue that the appellate court ignored this concern by stating that the funds must already pay administration costs and that there is no evidence that the costs of the new funds would be any greater. Plaintiffs assert that these liabilities and encumbrances did not exist before the Act and constitute a further violation of the pension protection clause.

¶ 31    This contention also lacks merit. Plaintiffs do not explain how the payment of the startup costs impairs or diminishes payment of their pension benefits. The Act does not require the borrowing or the spending of any specific amount for the startup or administrative costs of the funds. Additionally, as previously noted, the two new statewide funds are intended to streamline investments and eliminate unnecessary and redundant costs, thereby ensuring that *more money* is available to fund local police and firefighter pension benefits. See 40 ILCS 5/22B-114, 22C-114 (West 2020).

¶ 32 For these reasons, we find the circuit court properly granted summary judgment in defendants' favor on count I of the complaint.

¶ 33                                    II. Takings Clause

¶ 34 We next turn to plaintiffs' claim that the circuit court erred in granting defendants' motion for summary judgment because the Act violates the takings clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 15). Plaintiffs contend that, because the Act requires them "to fully transfer all of their private property, comprised of their securities, funds, assets, monies, and cash reserves" to the statewide pension investment funds, and because the Act requires them to bear the financial costs of transition, as well as to pay the costs and expenses incurred in the operation and administration of the funds, their private property has been taken and/or damaged in violation of the takings clause.

¶ 35 Article I, section 15, of the Illinois Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." *Id.* We have defined a taking as "a physical invasion of private property or the radical interference with a private property owner's use and enjoyment of the property." *Tzakis v. Maine Township*, 2020 IL 125017, ¶ 45. "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 31-32 (1995) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)).

¶ 36 As the appellate court correctly concluded, the Act does not take any of plaintiffs' private property. As participants in a defined benefit plan, they have a right to receive their promised benefits but do not somehow have a private property right in the source of funding for those payments. Plaintiffs claim that the Act requires them to fully transfer ownership of their private property, comprising the securities and other fund assets. The Act does not operate in that manner. It simply changes the control and management of the local funds' assets from one government-created pension fund to another type of government-created pension fund. As defendants assert, although plaintiffs have a constitutional right to receive

the benefit payments promised to them, which the Act does not change, they do not have a property right to any particular level of assets used to pay those benefits or in the way those assets are held or invested.

¶ 37 Plaintiffs have failed to identify any property right under Illinois law that is affected by the 2020 amendment to the Pension Code. It is undisputed that the Act does not impact the pension payments that plaintiffs are entitled to receive. Additionally, as defendants recognize, plaintiffs' takings claim must also fail because even if they had a property right in the local funds' assets, which they do not, the Act would not constitute a taking of that property for the government's use. The Act simply changes how local fund assets are managed and invested without affecting the ultimate use of those assets to pay the benefits of local fund members.

¶ 38 Consequently, the circuit court properly granted summary judgment in defendants' favor on count III of the complaint.

¶ 39 CONCLUSION

¶ 40 For the foregoing reasons, we affirm the judgment of the appellate court affirming the circuit court's order granting summary judgment in defendants' favor and against plaintiffs.

¶ 41 Judgments affirmed.