2026 IL App (1st) 250150

Opinion filed March 5, 2026

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

2026

| | | |
|---|---|---|
| PATRICIA KIEVLAN and NATOSHA TOLLER, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| JUDGES RETIREMENT SYSTEM OF ILLINOIS; BOARD OF TRUSTEES OF JUDGES RETIREMENT SYSTEM OF ILLINOIS; TIMOTHY B. BLAIR, in His Official Capacity as Executive Secretary of Judges Retirement System of Illinois; CHARLES M. FEENEY III, MICHAEL FRERICHS, THOMAS HOFFMAN, CATHERINE M. SHANNON, MARY JANE THEIS, DEBRA B. WALKER, and KAREN WALL, in Their Official Capacities as Board Members of Judges Retirement System of Illinois, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 1-25-0150 Circuit No. 24-CH-1708 |
| | ) ) | The Honorable Alison C. Conlon, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court, with opinion.
Justices Anderson and Bertani concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Patricia Kievlan and Natosha Toller, a retired and a current trial court judge, filed appeals with the Judges Retirement System of Illinois (JRS) Board of Trustees (Board), objecting to JRS's classification of them as Tier 2 members of JRS and seeking to be reclassified as Tier 1 members based upon their participation in other Illinois pension systems prior to the effective date of Public Act 96-889 (eff. Jan. 1, 2011). That act established the two-tier structure for public-employee pension benefits in Illinois and made significant changes to the Illinois public pension systems. Plaintiffs asserted that JRS's classification of them as Tier 2 members violated, among other things, the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5). The Board found that the applicable statute supported JRS's position. Thus, the Board rejected plaintiffs' pension protection clause argument on that basis and denied plaintiffs' requests for reclassification. Plaintiffs filed a complaint for administrative review in the trial court to challenge the Board's decision and also to litigate certain other constitutional claims that the Board did not have the authority to decide. The trial court ultimately disagreed with plaintiffs' arguments and upheld the Board's decision. Plaintiffs appealed. After the appeal was filed, this court allowed the State Universities Annuitants Association (SUAA), We Are One Illinois Coalition, and the Illinois Retired Teachers Association to file *amici curiae* briefs in support of plaintiffs. For the reasons that follow, we affirm the decisions of both the Board and the trial court.

¶ 2                                I. BACKGROUND

¶ 3                        A. The Illinois Public Pensions Systems,

                          the Reciprocal Act, and Public Act 96-889

¶ 4    There are five State-funded pension/retirement systems for public-sector employees in Illinois: the General Assembly Retirement System (GARS) (40 ILCS 5/art. 2 (West 2024)), the State Employees' Retirement System of Illinois (SERS) (40 ILCS 5/art. 14 (West 2024)), the State

2

Universities Retirement System (SURS) (40 ILCS 5/art. 15 (West 2024)), the Teachers' Retirement System of the State of Illinois (TRS) (40 ILCS 5/art. 16 (West 2024)), and JRS (40 ILCS 5/art. 18 (West 2024)). *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 4 (*Heaton*). Each of those systems provides a traditional defined benefit plan or plans through which its members (or participants) can earn specific benefits based upon their years of service, income, and age. *Id.* The requirements and benefits of each system are set forth in the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2024)), with a separate article of the Pension Code devoted to each system. In addition, each system is subject to the pension protection clause of the Illinois Constitution. *Heaton*, 2015 IL 118585, ¶ 4.

¶ 5        One key benefit of the five State-funded pension systems is that members are entitled to receive a retirement annuity, which is commonly referred to as a pension. See *id.* ¶ 5. The amount of a member's monthly pension benefit and how soon a member may begin receiving that benefit depend, in part, on the length of service in each system, when the member first began making contributions into each pension system and the particular calculation for each system. See *id.*

¶ 6        Prior to January 1, 2011, none of the five State-funded pension systems had a tier structure. See *id.* Within a particular pension system, benefits were calculated in the same manner for each member. See *id.* ¶¶ 6-8. In SERS, for example, a member's initial monthly pension benefit would be calculated by multiplying together three variables: (1) the member's final average monthly compensation, (2) the member's total number of years of credited service, and (3) a specific statutory multiplier percentage, such as 1.67%, that was set forth in the applicable article and section of the Pension Code. See *id.* ¶ 8. That initial monthly benefit amount would typically be subject to an annual increase after the first year of retirement. See *id.* ¶ 9. In addition, a member of any one of the five State-funded pension systems and certain other local pension systems could

3

use the State's reciprocal pension provisions contained in the Retirement Systems Reciprocal Act (Reciprocal Act) to combine his or her service credit if the member had participated in more than one of the State-funded or local pension systems during the course of his or her career. See 40 ILCS 5/20-115, 20-117 (West 2024).

¶ 7        In 2010, the Illinois legislature implemented certain pension reforms to the five State-funded pension systems by passing Public Act 96-889 (eff. Jan. 1, 2011) (Public Act or Act) into law. The public pension reforms went into effect on January 1, 2011, the effective date of most of the Public Act.[1] Among other things, the Public Act established a two-tier pension structure in each of the five State-funded pension systems. See *id.* Pursuant to that structure, members who had participated in a specific system prior to January 1, 2011, were generally classified as Tier 1 members of that system, and members who had not participated in the system prior to January 1, 2011, were generally classified as Tier 2 members. *Id.* Tier 2 members received significantly lower pension benefits than Tier 1 members and had to work longer or to a later age to receive those benefits. See 40 ILCS 5/1-160(c), (d) (West 2024); *Heaton*, 2015 IL 118585, ¶ 5. In addition to creating the two-tier structure, the Public Act also limited the ability of members of other pension systems to use the Reciprocal Act to qualify for Tier 1 benefits in JRS or GARS. See, *e.g.*, 40 ILCS 5/2-119, 18-124 (West 2024). However, the Public Act did not impose such restrictions to qualify for Tier 1 benefits in any of the other three State-funded pension systems. See *id.* § 1-160(a). To that end, the Public Act made Tier 1 JRS/GARS benefits available to only those persons who had "first served" as a judge (JRS) or a participant in GARS prior to January 1, 2011. See, *e.g.*, *id.* §§ 2-119, 18-124.

---

[1]The effective date of the Public Act is generally January 1, 2011. The amendments that the Public Act made to section 17-129 of the Pension Code (40 ILCS 5/17-129 (West 2024)), however, went into effect on April 14, 2010, the date that the Public Act became law. Pub. Act 96-889, § 10 (eff. Apr. 14, 2010) (amending 40 ILCS 5/17-129).

¶ 8                              B. Plaintiff Kievlan's Public Sector

                                Career and Her Interactions With JRS

¶ 9        In 1997, plaintiff Patricia Kievlan began working in the public sector as a teacher at a

community college. In that position, Kievlan became a participating member of SURS, a public

pension system under the Pension Code that had adopted the Reciprocal Act (see 40 ILCS 5/15-

192 (West 1996)). In 2008, Kievlan was elected to the St. Clair County Board and began

participating in the Illinois Municipal Retirement Fund (IMRF), another public pension system

under the Pension Code that had adopted the Reciprocal Act (see 40 ILCS 5/7-215 (West 2008)).

Kievlan was reelected to that position in 2012. In May 2013, Kievlan was appointed as an associate

judge of St. Clair County. Upon becoming a judge, Kievlan began participating in JRS, a third

public pension system under the Pension Code that had adopted the Reciprocal Act (see 40 ILCS

5/18-157 (West 2012)).

¶ 10        In May 2023, Kievlan applied for retirement benefits with JRS and opted for proportional

annuities under the Reciprocal Act. Kievlan's retirement was to take effect at the end of June or

beginning of July 2023. In calculating Kievlan's monthly pension benefit, JRS classified Kievlan

as a Tier 2 JRS member because Kievlan had begun her judicial service after the January 1, 2011,

effective date of the Public Act.

¶ 11        Kievlan sent a letter to JRS objecting to that classification and requesting that JRS

reclassify her as a Tier 1 member and recalculate her pension benefits in all three systems (JRS,

IMRF, and SURS) based upon that reclassification. Kievlan claimed in the letter that JRS's

calculation of her pension benefits as a Tier 2 member violated the pension protection clause of

the Illinois Constitution, the equal protection clause of the United States and Illinois Constitutions

(U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2), and the special legislation clause of

the Illinois Constitution (Ill. Const. 1970, art. IV, § 13). Kievlan also claimed that the entire Public Act was void and unconstitutional because the legislature had violated the three-readings requirement of the Illinois Constitution (*Id.* § 8(d)) in passing the Public Act into law.

¶ 12 The executive secretary of JRS sent a response letter to Kievlan denying her request for reclassification. In the response letter, the executive secretary explained that under the applicable provisions of the Pension Code, as amended by the Public Act, "anyone who [became] a JRS member after January 1, 2011, [was] eligible for Tier 2 JRS benefits, regardless of the judge's Tier 1 service in other Illinois reciprocal retirement systems." The executive secretary set forth in the letter the total amount of the monthly pension benefit that Kievlan would receive as a Tier 2 member of JRS, the total amount that Kievlan would have received if she had been classified as a Tier 1 member of JRS, and the portions of those total amounts that were attributable to each of the three pension systems in which Kievlan had participated. The amounts in the letter indicated that Kievlan would have received a substantially greater monthly pension benefit if she had been classified as a Tier 1 member of JRS, rather than a Tier 2 member.

¶ 13 Kievlan appealed JRS's classification decision to the Board. In her appeal letter, Kievlan explained her three-readings challenge in greater detail and also added a contention that, based upon comments that were made during the legislative debate on the Public Act (indicating the legislature's intent), the Public Act did not apply to her because she was already a public-sector employee when the Public Act was passed into law. Kievlan attached a copy of the relevant legislative transcript to her appeal letter. The transcript showed that during the floor debates in the House and Senate on the bill that eventually became the Public Act, the chief sponsors of the bill made comments shortly before the bill was passed into law indicating that the Tier 2 provisions of the bill would apply only to new public-sector employees and not to current employees.

6

¶ 14                          C. Plaintiff Toller's Public-Sector

                          Career and Her Interactions with JRS

¶ 15        Plaintiff Natosha Toller began working in the public sector in Illinois in 2005 as an assistant state's attorney with the Cook County State's Attorney's Office. In that position, Toller participated in the County Employees' and Officers' Annuity and Benefit Fund of Cook County (CEOABF), a public pension system under the Pension Code that had adopted the Reciprocal Act (see 40 ILCS 5/9-223 (West 2004)). Like Kievlan, when Toller began paying into CEOABF, no pension tiers existed. In 2022, Toller began working for the Judicial Inquiry Board and began participating in SERS, another public pension system under the Pension Code that had adopted the Reciprocal Act (see 40 ILCS 5/14-145 (West 2022)). Under SERS, Toller was classified as a Tier 1 member based upon her prior participation in CEOABF. In March 2023, Toller was appointed as an associate judge in Cook County and began participating in JRS.

¶ 16        Shortly after Toller was appointed as a judge, she sent JRS a letter challenging her classification as a Tier 2 member of JRS and repeating the same assertions that Kievlan had made to JRS regarding the applicability of the Public Act. As with Kievlan, JRS's executive secretary sent Toller a response letter denying Toller's request for reclassification and explaining that, based upon the language of the Public Act, Toller would remain classified as a Tier 2 JRS member. Toller appealed that decision to the Board.

¶ 17                          D. The Board's Final Administrative Decision

¶ 18        In October 2023 and January 2024, the Board held its official meetings. During those meetings, the Board considered and discussed plaintiffs' requests to be reclassified as Tier 1 members/participants of JRS.

7

¶ 19      In January 2024, the Board entered its written decision denying plaintiffs' requests for reclassification.[2] The decision was sent to plaintiffs the following month. In the decision, the Board applied the same reasoning as to each plaintiff. According to the Board, under the applicable statutory language of the Public Act, the determination of whether a JRS participant was to be classified as Tier 1 or Tier 2 was made based upon when the participant "first serve[d] as a judge." See *id.* § 18-124. Pursuant to that statutory language, the Board maintained that JRS had consistently paid Tier 2 benefits to participants who first served as a judge on or after January 1, 2011, "notwithstanding prior service credit in a reciprocal system that predate[d] January 1, 2011." In further explaining its decision, the Board stated that the pension protection clause only protected "vested rights;" that participation in JRS was a prerequisite to obtaining JRS benefits; and that because plaintiffs were not participants in JRS when the Public Act was passed (presumably, when the Public Act went into effect), their rights to JRS benefits had not yet "accrued" and were not protected by the pension protection clause. The Board noted that the legislature had chosen the "restrictive language" that appeared in the Public Act and that if the legislature had intended to confer Tier 1 benefits on JRS participants based upon their prior service in other pension systems, the legislature could have so specified. As a final matter, the Board commented that it lacked the authority to address plaintiffs' remaining constitutional claims, to declare the Public Act unconstitutional, or to even question the validity of the Public Act.

¶ 20      E. The Administrative Review Proceedings in the Trial Court

¶ 21      In March 2024, plaintiffs filed a complaint in the trial court for administrative review of the Board's decision. The complaint contained multiple counts and raised the same arguments that

---

[2]The Board issued a separate decision as to each plaintiff. However, for the purpose of simplicity, and because the reasoning in both decisions was the same, we have referred to the Board's ruling as a single decision here.

plaintiffs had made to the Board—that JRS's classification of plaintiffs as Tier 2 members and the application of the Public Act to the determination of plaintiffs' pension benefits violated the pension protection clause of the Illinois Constitution, the equal protection clause of the United States and Illinois Constitutions, the special legislation clause of the Illinois Constitution, the legislative intent behind the Public Act, and the three-readings requirement of the Illinois Constitution. Defendants filed an answer to the complaint, which consisted of the administrative record that was before the Board when the Board made its decision. The parties filed briefs in support of their respective positions. In addition to the parties' briefs, the trial court also granted SUAA leave to file an *amicus curiae* brief in support of plaintiffs.

¶ 22    In October 2024, a hearing was held on plaintiffs' complaint for administrative review. After listening to the oral arguments of the attorneys, the trial court took the matter under advisement. A few months later, in December 2024, the trial court issued a written ruling rejecting plaintiffs' arguments and upholding the Board's administrative decision to deny plaintiffs' requests to be reclassified as Tier 1 members of JRS. Plaintiffs appealed.[3]

---

[3]None of the parties or *amici* have questioned whether it is proper for this court to hear this case. Every judge, regardless of tier classification, has a pecuniary interest in the outcome of this case. Such an interest would normally require us to disqualify ourselves, and arguments can be made both for and against the application of the common law rule of necessity. See *Jorgensen v. Blagojevich*, 211 Ill. 2d 286, 298-99 (2004); see also Ill. Code Jud. Conduct (2023), Canon 2, R. 2.11 cmt. 3 (eff. May 17, 2023) (recognizing, as an example, that under the rule of necessity a judge might be required to participate in judicial review of a judicial salary statute). Our supreme court, however, is well aware of the conflict issue that any judge would face if called upon to decide this case and has, nevertheless, assigned this case to this district of the appellate court to decide after the First District Appellate Court recused from this case. We, therefore, proceed with deciding this case.

¶ 23                                    II. ANALYSIS

¶ 24        On appeal, plaintiffs argue that the Board and the trial court erred in denying plaintiffs'

requests to be reclassified as Tier 1 members of JRS based on the same arguments that they made

throughout the proceedings. Plaintiffs also again assert that the entire Public Act was void and

unconstitutional because the legislature violated the three-readings requirement of the Illinois

Constitution in passing the Public Act into law. We will address each of those arguments in turn.

¶ 25                               A. Standard of Review

¶ 26        In cases involving administrative review, the appellate court reviews the decision of the

administrative agency, not the determination of the trial court. *Marconi v. Chicago Heights Police

Pension Board*, 225 Ill. 2d 497, 531 (2006). Judicial review of a decision of the Board is governed

by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2024)) and extends to all

questions of fact and law presented by the entire record. See 40 ILCS 5/18-164 (West 2024); 735

ILCS 5/3-110 (West 2024); *Marconi*, 225 Ill. 2d at 531-32. The standard of review that applies on

appeal is determined by whether the question presented is one of fact, one of law, or a mixed

question of fact and law. *Marconi*, 225 Ill. 2d at 532. The arguments presented in this particular

case raise questions as to the interpretation of the Pension Code and the constitutionality of

amendments made to the Pension Code by Public Act 96-889. Those questions are questions of

law that are subject to a *de novo* standard of review on appeal. See *Williamson County Board of

Commissioners v. Board of Trustees of the Illinois Municipal Retirement Fund*, 2020 IL 125330,

¶ 26 (indicating that questions regarding the constitutionality of a statute and statutory

interpretation are questions of law that are subject to *de novo* review on appeal). In addition, to the

extent that the Board interpreted the applicable JRS pension statutes, that interpretation is relevant,

but not binding on, the reviewing court. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254-58 (1995).

¶ 27                                    B. Plaintiffs' Pension Protection Clause Claim

¶ 28          Plaintiffs argue that the Board erred in denying plaintiffs' requests to be reclassified as Tier 1 members of JRS. Plaintiffs assert that the Board's underlying interpretation of the Pension Code, as amended by the Public Act, and the Board's ultimate denial of plaintiffs' requests for reclassification were flawed and violate the pension protection clause of the Illinois Constitution. In support of that assertion, plaintiffs make two related contentions: (1) that when plaintiffs first started working in the public sector and began contributing to pension systems that were covered by the Reciprocal Act, the Pension Code gave them the right to move to other covered pension systems, including JRS, and to access the benefits of those systems that were in effect at the time that plaintiffs first started working in the public sector; and (2) that because the Public Act, which went into effect after plaintiffs first started working in the public sector, eliminates that right of access to such benefits for plaintiffs, who first served as judges after January 1, 2011, the Public Act violates the pension protection clause and is unconstitutional. According to plaintiffs, the right of access upon which they rely is contained in section 20-101 of the Reciprocal Act (40 ILCS 5/20-101 (West 1996)), which grants a participant in a covered pension system the right to combine "pension credit" earned from two or more covered employers to calculate a single pension annuity that may be greater than would be received if the participant had retired from each system individually.

¶ 29          Plaintiffs claim that the phrase "pension credit" in that statute means or includes the right to access the benefits of other covered pension systems. Plaintiffs contend that was the "deal" that was in place when plaintiffs first began working in the public sector and is an interpretation of the

11

statute that considers the Pension Code as a whole. In further support of their statutory-interpretation argument, plaintiffs point out that the purpose of the Reciprocal Act is to empower employees to transfer employment from one governmental unit to another while "assur[ing] full and continuous pension credit" for all covered pension systems. See *id.* Plaintiffs also note that any ambiguity created by JRS's interpretation of the Reciprocal Act should be resolved in plaintiffs' favor, as members of certain public pension systems (see *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund of Chicago*, 2018 IL 122793, ¶ 24). For these reasons, plaintiffs ask that we reverse the Board's decision, as being in violation of the pension protection clause, and that we remand this case to the Board with directions to reclassify plaintiffs as Tier 1 JRS members.

¶ 30        *Amici* repeat many of the same assertions that plaintiffs make and also point out the general contract principle that the law in existence at the time a contract is formed is considered to be part of the contract (see *Taft v. Board of Trustees of the Police Pension Fund of Winthrop Harbor*, 133 Ill. App. 3d 566, 572 (1985)), a principle that plaintiffs refer to as well in their reply brief. Citing that principle, *amici* contend that (1) the benefit formula that was in effect in JRS when plaintiffs first started working in the public sector was part of plaintiffs' contract and determines how plaintiffs' JRS pension benefits should be calculated, and (2) the "first serves as a judge" requirement that was added to the JRS pension provisions by the Public Act did not exist when plaintiffs first started working in the public sector and cannot be applied as to plaintiffs without violating the pension protection clause. For those reasons, *amici* join plaintiffs in requesting that

12

we reverse the Board's decision and that we remand this case with directions to the Board to reclassify plaintiffs as Tier 1 JRS members.[4]

¶ 31        Defendants argue that the Board's ruling was proper and should be upheld. In support of their argument, defendants contend that (1) when plaintiffs first started working in the public sector, neither the Reciprocal Act, nor any other provisions of the Pension Code, accorded plaintiffs the right to access the benefit structure that was in place in a different pension system of which plaintiffs were not members—JRS, nor did it promise plaintiffs a continuity of benefits when they moved from one covered pension system to another; (2) nothing in the Reciprocal Act creates a single government-wide pension system, establishes a multisystem membership that applies once a person becomes a member of any covered pension system, creates a single unified pension based on multisystem membership, or makes persons' rights to benefits in each covered system relate back to the date of their first membership in any covered system; (3) the Reciprocal Act merely provides for the continuity of pension credits (that pension credits may be combined in certain specified ways) and not for the continuity of pension benefits; (4) plaintiffs' assertion to the contrary conflates the concept of pension credits with the concept of pension benefits; (5) plaintiffs' argument in that regard is not supported by a reading of the Pension Code as a whole as no other provisions of the Pension Code entitle persons to access the benefits of a system before they become members of that system; (6) plaintiffs also are not aided by the principle that an ambiguous pension statute should be liberally construed in favor of the pensioner as there is no ambiguity in the Reciprocal Act or the Pension Code as a whole that would support plaintiffs' efforts in the present case to read promises into those statutes that the statutes do not contain; and

_____

[4]In their briefs on appeal, *amici* address only the pension protection clause issue and do not address, or take a position on, any of the other issues raised by plaintiffs.

(7) plaintiffs received what they were promised under the Reciprocal Act and other provisions of the Pension Code (the continuity of pension credits) and, thus, their constitutionally protected benefits were not diminished in violation of the pension protection clause. For all the reasons set forth, defendants ask that we affirm the Board's ruling, denying plaintiffs' requests to be reclassified as Tier 1 members of JRS.

¶ 32      The pension protection clause of the Illinois Constitution provides that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. Pursuant to that clause, a public employee's membership/participation in a State or local government pension or retirement system is an enforceable contractual relationship and an employee has a constitutionally protected and legally enforceable right to receive the benefits of that particular relationship. See *Williamson County Board of Commissioners*, 2020 IL 125330, ¶¶ 31-32. The clause "is a statement by the people of [this state], made in the clearest possible terms, that the authority of the legislature does not include the power to diminish or impair the benefits of membership in a public retirement system." *Heaton*, 2015 IL 118585, ¶ 76.

¶ 33      The protection provided by the pension protection clause is broad in nature. The language of the clause places no limits on the kind of benefits that are protected and protects from diminishment any benefits of the enforceable contractual relationship that flow from membership in a particular State retirement system. See *id.* ¶ 45; *Williamson County Board of Commissioners*, 2020 IL 125330, ¶¶ 31-32; *Kanerva v. Weems*, 2014 IL 115811, ¶¶ 38-41; *Carmichael*, 2018 IL 122793, ¶¶ 29-30. Under the pension protection clause, if something qualifies as a benefit of the enforceable contractual relationship derived from membership in any one of the individual State

14

pension systems, it is protected and cannot be diminished or impaired. *Heaton*, 2015 IL 118585, ¶ 45.

¶ 34      The protection provided by the pension protection clause attaches once an individual begins employment in a position covered by a public pension system, not when the individual ultimately retires. *Id.* ¶ 46. Therefore, once a person begins work and becomes a member of a particular public pension system, any subsequent changes to the Pension Code that would diminish or impair the benefits conferred by membership in that system are prohibited by the pension protection clause (as to that person) and cannot be applied to that person. *Id.* Thus, the clause prohibits unilateral action by the legislature (statutory amendment) that diminishes or impairs a constitutionally protected pension benefit. *Williamson County Board of Commissioners*, 2020 IL 125330, ¶ 32.

¶ 35      The "benefit" that plaintiffs claim is protected by the pension protection clause in this case is the right to access Tier 1 membership in JRS. Plaintiffs insist that they were granted such right under section 20-101 of the Reciprocal Act and its provisions for continuity and preservation of "pension credit" at the time they first contracted to be employed as a government employee. Plaintiffs maintain that "pension credit" must be interpreted as meaning or including "pension benefits" as well. Plaintiffs' pension protection clause claim, therefore, calls upon this court to interpret section 20-101 and any related provisions of the Reciprocal Act.

¶ 36      Section 20-101 of the Reciprocal Act, which specifically addresses the continuity and preservation of pension credit, provides as follows:

> "There is established a plan for the continuity and preservation of pension credit, in accordance with the provisions hereof, in the case of employees transferring employment from one governmental unit to another. The purpose of this plan is to

assure full and continuous pension credit for all service in public employment which is covered by a retirement system.

The acceptance of the provisions of this Article, shall be optional with the employee, or in the event of his death, with his survivor; however, the provisions of Section 20-120 [40 ILCS 5/20-120 (West 1996)] shall be applicable to every person who applies for benefits from 2 or more retirement systems covered by this Article." 40 ILCS 5/20-101 (West 1996).

¶ 37 Subject to certain exceptions that do not apply in the present case, " '[p]ension credit' " is defined in the Reciprocal Act as "[c]redit or equities acquired by an employee in the form of contributions, earnings or service as defined under the law governing each of the systems in which he has credits or equities." *Id.* § 20-109.

¶ 38 In addition, section 20-117 of the Reciprocal Act, which addresses the vesting of pension credit under all participating or covered systems, provides that:

"If the vesting of pension credit in any participating system for a retirement annuity or survivor's annuity is based upon length of service, the combined service under all participating systems shall be considered in establishing such vesting of pension credit." *Id.* § 20-117.

¶ 39 Finally, section 20-121 of the Reciprocal Act, the section that addresses the calculation of proportional retirement annuities (pensions), provides, in pertinent part, as follows:

"Upon retirement of the employee, a proportional retirement annuity shall be computed by each participating system in which pension credit has been established on the basis of pension credits under each system. The computation shall be *in accordance with the formula or method prescribed by each participating system*

16

*which is in effect at the date of the employee's latest withdrawal from service covered by any of the systems in which he has pension credits which he elects to have considered under this Article.*" (Emphasis added.) *Id.* § 20-121.

¶ 40 In interpreting section 20-101 of the Reciprocal Act and any related provisions, we must be mindful of the rules of statutory construction. Statutes are presumed to be constitutional, and the party challenging the validity of a statute bears the burden of rebutting that presumption by establishing a clear constitutional violation. *Carmichael*, 2018 IL 122793, ¶ 24. A court has a duty to construe a statute in a manner that upholds its validity and constitutionality if such a construction is reasonably possible. *Id.* The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The most reliable indicator of that intent is the plain and ordinary meaning of the language of the statute itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute (the reason for the law, the problem sought to be remedied, the goals to be achieved, and the consequences of construing the statute one way or another). See *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009); *Carmichael*, 2018 IL 122793, ¶ 35; 5 ILCS 70/1.01 (West 2024) (indicating that in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is

17

susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990). In addition, when a pension statute is involved, if there is any question as to the legislative intent and clarity of the language of the statute, the statute must be liberally construed in favor of the rights of the pensioner. See *Carmichael*, 2018 IL 122793, ¶ 24.

¶ 41   In the present case, after applying the rules of statutory interpretation to the provisions of the Reciprocal Act, we conclude that the Reciprocal Act does not support plaintiffs' and *amici's* position. Contrary to plaintiffs' and *amici's* assertion, nothing in the Reciprocal Act grants plaintiffs the right to access Tier 1 JRS benefits based upon their participation in a reciprocal pension system prior to the January 1, 2011, effective date of the Public Act. The language of section 20-101 of the Reciprocal Act, the main section upon which plaintiffs and *amici* rely, is clear and unambiguous. It provides solely for the continuation and preservation of "pension credit" and not for the continuation and preservation of "pension benefits" as plaintiffs and *amici* contend. See 40 ILCS 5/20-101 (West 1996). In addition, section 20-117 of the Act allows "pension credit" to be combined to satisfy any applicable vesting requirements that are based upon length of service, and section 20-121 of the Act requires each system to compute its portion of a member's proportional annuity based upon the "pension credits" that a member has under each individual system. This demonstrates that the Act's focus is on the preservation and continuation of "pension credit," and not upon the preservation and continuation of particular "pension benefits." See *id.* §§ 20-117, 20-121. "Credits" and "benefits" are two different things. The legislature used those two different words in the Reciprocal Act for a reason. See *In re Marriage of Paris*, 2020 IL App (1st) 181116, ¶ 38 (recognizing, as an elementary rule of statutory construction, that when the legislature uses certain words in one instance and different words in another, it intends a different

18

meaning). We may not depart from the plain language of the Reciprocal Act and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. See *Gaffney*, 2012 IL 110012, ¶ 56.

¶ 42   Nor do we believe that plaintiffs' and *amici*'s position on this issue is supported by a reading of the Pension Code as a whole. The provisions of the Pension Code that govern JRS benefits are contained in article 18 and specifically limit Tier 1 benefits to those persons who first served as a judge before January 1, 2011. See 40 ILCS 5/18-124, 18-125, 18-125.1, 18-128.01 (West 2022). Although the law in existence at the time a contract is entered into is generally considered to be part of the contract (see *Taft*, 133 Ill. App. 3d at 572), we do not agree that in this case, that legal principle would make Tier 1 JRS benefits part of plaintiffs' previous contracts. Plaintiffs' contracts, at least initially, were with the pension systems that they became members of when they first started working in the public sector.[5] The benefits and rules that applied to those systems are defined in the article of the Pension Code devoted to each of those systems and not in the article that was devoted to JRS. The JRS system and every other public pension system under the Pension Code is a separate system with separate statutory provisions, separate funds, and separate administrations. The Reciprocal Act certainly protects "vested" "pension credit," but explicitly and unambiguously recognizes the singularity of each of the systems. See 40 ILCS 5/20-109 (West 1996) (defining "pension credit" as that created under the "law governing each of the systems"); *Id.* § 20-117 (providing for the combination of "pension credit" in "any participating system"); *Id.* § 20-121 (providing that a proportional retirement annuity is to be calculated utilizing

---

[5]Arguably, each plaintiff has three different contracts in this case, one for each pension system in which each plaintiff has participated.

"pension credits under each system" using the formula "prescribed by each participating system"). The JRS Tier 2 legislation does not impair credits earned in each individual system.

¶ 43   Because the Reciprocal Act did not grant plaintiffs the right to access Tier 1 benefits in JRS when plaintiffs first started working in other units of government, plaintiffs' pension benefits were not diminished in violation of the pension protection clause when the Public Act later limited Tier 1 JRS benefits to those persons who first served as a judge before January 1, 2011. Plaintiffs did not decide to serve as judges until well after the effective date of the Public Act date and were, therefore, properly classified as Tier 2 members by JRS. As the *amici* point out, the law in existence at the time a contract is entered is presumed to be part of that contract. At the time plaintiffs entered their agreements with the State of Illinois to accept their positions in the judiciary, the law designating them as Tier 2 members and the formula to be applied to calculate their pension annuity was in existence. Accordingly, the Board did not err in denying plaintiffs' requests to be reclassified as Tier 1 JRS members.

¶ 44   Although we have reviewed the case law decisions that plaintiffs and *amici* rely on in support of their arguments, we do not agree that those decisions require that a different result be reached on this issue. In each of those cases, a pension protection clause violation was found because the plaintiffs were already members of the particular pension system at issue when the Pension Code was amended and certain retirement benefits of that particular system were taken away or diminished. See, *e.g.*, *Heaton*, 2015 IL 118585, ¶ 47 (finding that amendments to the Pension Code that reduced the Tier 1 pension benefits of current Tier 1 members of several of the public pension systems violated the pension protection clause); *Carmichael*, 2018 IL 122793, ¶¶ 32, 51 (finding that amendments to the Pension Code that took away the rights of current members of the public pension systems at issue to earn pension service credit while they worked

20

for private unions during leaves of absence and to have their pension benefits calculated using their higher union salaries violated the pension protection clause); *Taft*, 133 Ill. App. 3d at 573 (finding that amendments to the Pension Code that required that the disability pension of a current member of the pension system or systems at issue be reduced to offset the related workers' compensation award that the member had received diminished the member's increased pension benefits and violated the pension protection clause). Those are not the facts before this court in the present case, and there is no Illinois case law supporting plaintiffs' arguments under the specific circumstances of the case at bar.

¶ 45                    C. Plaintiffs' Equal Protection Clause

and Special Legislation Clause Claims

¶ 46        As their second point of contention, plaintiffs argue that the Public Act as applied to them violates the equal protection clause of the United States and Illinois Constitutions and the special legislation clause of the Illinois Constitution. In support of that argument, plaintiffs assert that the Public Act creates an arbitrary, unreasonable, and unconstitutional classification because (1) it treats identically situated individuals (people with pre-2011 public service) differently depending upon whether they join JRS (or GARS) as compared to any of the other reciprocal pension systems, and (2) it does so without a rational basis. The effect of that unconstitutional classification, according to plaintiffs, is that the Public Act confers a benefit on some individuals with pre-2011 public service by allowing them to keep their Tier 1 status if they transfer to another reciprocal pension system (other than JRS (or GARS)) but declines to extend that same benefit to other individuals who are identically or similarly situated who later transfer to JRS (or GARS). In addition, plaintiffs maintain, the reason cited by defendants to justify that classification—the alleged underfunding of JRS (and GARS) and of the State pension system as a whole—does not

21

constitute a rational basis because the mismanagement of the State-funded pension systems has nothing to do with the conduct of the group of individuals that has been targeted by the classification and that the provisions of the Public Act at issue are not rationally related to addressing the underfunding problem. Plaintiffs ask that we find that the Public Act, as applied to them, violates the equal protection and special legislation clauses, that we reverse the decisions of the trial court and the Board on that basis, and that we remand this case with directions to the Board to reclassify plaintiffs as Tier 1 members of JRS.

¶ 47        Defendants argue that plaintiffs' equal protection and special legislation clause claims lack merit and should be rejected. According to defendants, plaintiffs' claims fail for two reasons. First, defendants contend, plaintiffs have not shown that the challenged classification group in this case (persons with pre-2011 membership in any of the covered pension systems who later become members of JRS (or GARS)) is similarly situated to the comparison group (persons with pre-2011 membership in any of the covered systems who later become members of another covered pension system, other than JRS (or GARS)). Rather, defendants maintain, the two groups are not similarly situated because each of the covered pension systems is a separate entity with different benefits and different requirements of membership and because JRS (and GARS) involves prestigious positions with higher salaries. Second and finally, defendants contend the challenged classification is supported by a rational basis because limiting Tier 1 benefits in JRS and GARS as the legislature did in the Public Act rationally furthers the State's economic goals by reducing costs and promoting the financial health and viability of those two pension systems and rationally recognizes the differences between those two pension systems and the other covered pension systems. In making that contention, defendants point out that (1) the legislature was not required to make all potential Tier 2 pension reforms in exactly the same manner, (2) JRS and GARS were the most

22

underfunded of the five State-funded pension systems (by funding ratio), (3) JRS and GARS members received more favorable Tier 1 benefits and Tier 2 reforms than members of other systems, and (4) there is less disincentive to transfer into JRS or GARS caused by the Tier 2 reforms than in other systems due to the prestige and higher salaries involved with JRS/GARS positions. Thus, defendants maintain that, overall, the limitation on Tier 1 benefits imposed on JRS (and GARS) by the Public Act struck a reasonable balance that promoted the fiscal health of JRS (and GARS) while dealing with a complex situation that raised multiple competing concerns. Therefore, defendants ask that we affirm the decisions of the trial court and the Board.

¶ 48       The equal protection clause of both the United States and Illinois Constitutions provides that no person shall be denied "the equal protection of the laws." U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. The equal protection clause guarantees that the government must treat similarly situated persons in a similar manner, unless the government can demonstrate an appropriate reason to treat those persons differently. See *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 46; *People v. Kimbrough*, 163 Ill. 2d 231, 237 (1994). The equal protection clause does not prohibit the legislature from drawing distinctions in legislation among different categories of people as long as the legislature does not do so based on criteria that is wholly unrelated to the legislation's purpose. See *Caulkins*, 2023 IL 129453, ¶ 46. A court uses the same analysis to resolve an equal protection claim, regardless of whether that claim is made under the United States or Illinois Constitution. See *id.*

¶ 49       In analyzing an equal protection claim, as a threshold matter, a court must determine whether the claimant is similarly situated to the comparison group. See *id.* ¶ 47. Different treatment of unlike groups will not support an equal protection claim. *Id.* Two classes/groups are similarly situated only if they are alike in all relevant respects. *Id.* If a claimant fails to show that he is

23

similarly situated to the comparison group, his equal protection claim must be rejected. See *id.* ¶¶ 47, 53; *In re M.A.*, 2015 IL 118049, ¶ 26. In determining whether a claimant is similarly situated to a comparison group, a court must examine the purpose of the legislation at issue. See *Caulkins*, 2023 IL 129453, ¶¶ 48, 51, 53.

¶ 50    As in the instant case, when a statutory classification does not impinge upon a fundamental constitutional right and is not based upon a suspect class, such as race, a court will use the rational basis test to review the statute's validity. *Kimbrough*, 163 Ill. 2d at 237. "Under the rational basis test, [a] statutory classification is constitutional if it bears a rational basis to a legitimate State interest." *Id.* If any set of facts can reasonably be conceived to justify a classification, the classification will survive the rational basis test. See *id.* at 238.

¶ 51    The special legislation clause of the Illinois Constitution provides that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. The special legislation clause supplements the equal protection clause and, in many cases, provides the same protection that the equal protection clause provides. *Caulkins*, 2023 IL 129453, ¶ 49. Although the legislature enjoys broad discretion in making statutory classifications, the special legislation clause prohibits the legislature from arbitrarily conferring a special benefit or privilege upon one person or group while excluding other persons or groups that are similarly situated. See *id.* Thus, the special legislation clause is intended to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound and reasonable basis for doing so. See *id.* A special legislation challenge is generally evaluated under the same standards that are used to evaluate an equal protection challenge. *Id.*

¶ 52    In the present case, after considering the legal principles set forth above, we conclude that the Public Act, as applied to plaintiffs, does not violate the equal protection or special legislation

clauses. We reach that conclusion for two reasons. First, upon considering the relative positions of plaintiffs' group and the comparison group in light of the broad purpose of the Public Act—pension reform—we determine that the two groups are not similarly situated. Contrary to plaintiffs' underlying assertion throughout this case, the Illinois public pension system is not a single unified system. Rather, there are multiple individual pension systems benefitting employees working in different units of government, and each one of those systems has its own fund, its own administrators, its own requirements, and its own benefits. In addition, unlike the persons in the comparison group, persons who later transfer into JRS (or GARS) will generally be moving into more prestigious positions with much higher salaries. It cannot be stated, therefore, that plaintiffs' group and the comparison group are similarly situated. See *id.* ¶ 47 (indicating that two groups are similarly situated only if they are alike in all relevant respects). Accordingly, we must reject plaintiffs' equal protection and special legislation clause claims. See *id.* ¶¶ 47, 53 (stating that if a claimant fails to show that he is similarly situated to the comparison group, his equal protection claim must be rejected).

¶ 53        Second, even if we had found that plaintiffs' group and the comparison group were similarly situated, plaintiffs' equal protection and special legislation clause claims would still fail because the classifications imposed by the Public Act are supported by a rational basis. See *Kimbrough*, 163 Ill. 2d at 237-38. As defendants correctly point out, in limiting Tier 1 benefits in JRS (and GARS), the Public Act rationally recognized that there were significant differences between JRS (and GARS) and the other reciprocal pension systems—most notably, that JRS (and GARS) members generally held more prestigious positions with much higher salaries and that, because of that distinction, JRS (and GARS) had less of a transfer disincentive caused by the enactment of the two-tier pension structure. In addition, in implementing the changes at issue to

25

the benefit structure of JRS (and GARS), the Public Act rationally furthered the State's economic goals by reducing costs and promoting the financial health and viability of JRS (and GARS) and of the public pension system as a whole. See *Piccioli v. Board of Trustees of the Teachers' Retirement System*, 2019 IL 122905, ¶ 21 (recognizing that advancement of the State's economic goals is clearly a legitimate rationale for legislation and also that inclusion of a cutoff date in a statute that confers benefits or establishes a government program is entirely rational because the State has only limited resources). Indeed, the limitations imposed upon JRS (and GARS) by the Public Act were only a few of the many changes that the Public Act made to the Pension Code in an attempt to help shore up the State's public pension systems as a whole. We, therefore, reject plaintiffs' equal protection and special legislation clause claims.

¶ 54                                    D. Plaintiffs' Legislative Intent Claim

¶ 55        As their third point on appeal, plaintiffs argue in the alternative that the Board's interpretation of the Public Act violates the legislative intent behind the Public Act and produces absurd and unjust consequences that the legislature did not intend. In support of that argument, plaintiffs assert that the transcripts of the proceedings in the House and Senate during the floor debates of the bill that became the Public Act (showing comments that were made by the chief sponsors of the bill shortly before the bill was passed into law) make it clear that the Public Act was not meant to apply to individuals, like plaintiffs, who had already participated in a covered pension system prior to the January 1, 2011, effective date of the Public Act. Plaintiffs ask, therefore, that we reverse the decisions of the trial court and the Board on that basis and that we remand this case with directions to the Board to reclassify plaintiffs as Tier 1 JRS members.

¶ 56        Defendants argue that plaintiffs' legislative intent claim lacks merit and should be rejected. Defendants assert in general that plaintiffs provide no basis that would warrant this court taking

26

the extraordinary step of disregarding the plain language of the Public Act. More specifically, defendants contend that (1) the language of the Public Act is clear and unambiguous and plainly states that the retirement eligibility and benefits for a JRS participant depend on when that participant "first serves as a judge"; (2) the plain language of the Public Act must be applied as written without reading into the Public Act exceptions, limitations, or conditions that the legislature did not express; (3) applying the Public Act's plain, actual language would not lead to absurd and unjust consequences not contemplated by the legislature as there is nothing absurd or unjust about tying retirement benefits and eligibility under JRS to the date that a participant first serves as a judge, regardless of whether that person held other government jobs and participated in other state pension systems; (4) because the language of the Public Act is clear and unambiguous, it would be improper for this court to consider the legislative history that plaintiffs put forward, regardless of whether plaintiffs can show that remarks made by the bill's chief sponsors favor plaintiffs' position on this issue; and (5) even if the language of the Public Act is ambiguous, the floor debate comments that plaintiffs cite are generalized remarks that fall far short of demonstrating a clearly expressed intent behind the Public Act that would be defeated by applying the language of the Public Act as written. For all of the reasons stated, therefore, defendants ask that we affirm the trial court's and Board's decisions.

¶ 57      As noted above, the fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Gaffney*, 2012 IL 110012, ¶ 56. The most reliable indicator of that intent is the plain and ordinary meaning of the language of the statute itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute (the reason for the law, the problem sought to be remedied, the goals to be

27

achieved, and the consequences of construing the statute one way or another). See *Blum*, 235 Ill. 2d at 29; *Carmichael*, 2018 IL 122793, ¶ 35; 5 ILCS 70/1.01 (West 2024). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams*, 139 Ill. 2d at 51.

¶ 58        In addition to the above rules, when a pension statute is involved, if there is any question as to the legislative intent and clarity of the language of the statute, the statute must be liberally construed in favor of the rights of the pensioner. See *Carmichael*, 2018 IL 122793, ¶ 24. Furthermore, in construing a statute, a court will presume that the legislature did not intend to achieve absurd or unjust results. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510 (2007). When a literal interpretation of a statutory term would lead to consequences that the legislature could not have contemplated or intended, a court will give the statutory language a reasonable interpretation. See *id.*

¶ 59        In the present case, after considering the language of the Public Act and the rules of statutory construction, we conclude that plaintiffs' argument on this issue lacks merit. The language of the Public Act is clear and unambiguous and expressly limits Tier 1 JRS benefits to those members of JRS "who first serve[d] as a judge" on or before the January 1, 2011, effective date of the Public Act. Contrary to plaintiffs' implied assertion, we cannot disregard the plain language of the Public Act and read into the Act exceptions, limitations, or conditions that the legislature did not express. See *Gaffney*, 2012 IL 110012, ¶ 56. Nor can we, under the present

28

circumstances, use legislative history or other extrinsic aids of statutory construction to go beyond the Public Act's clear and unambiguous plain language. See *id.* Although a court may do so when the literal language of a statute is contrary to the clear and obvious intent of the legislature in enacting the statute (see *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 112 (1993) (indicating that when the spirit and intent of the legislature are clearly expressed and the objects and purposes of a statute are clearly set forth, courts are not bound by the literal language of a particular statutory clause that might defeat the clearly expressed intent)) or when applying the literal language of a statute would lead to an absurd result (see *People v. Hanna*, 207 Ill. 2d 486, 498 (2003) (recognizing that when a plain or literal reading of a statute produces an absurd result, the statute should be construed so as to avoid that absurdity)), such instances are extremely rare and are not the circumstances before the court in the present case. We, therefore, cannot adopt plaintiffs' argument on this issue.

¶ 60                              E. Plaintiffs' Three-Readings Rule Claim

¶ 61          As their fourth and final contention on appeal, plaintiffs argue that the entire Public Act must be found to be void and unconstitutional because the legislature violated the three-readings rule of the Illinois Constitution in passing the Public Act into law (see Ill. Const. 1970, art. IV, § 8(d) (requiring that a bill be read by title on three different days in each house of the legislature)). As plaintiffs[6] and defendants both note, however, our supreme court has already rejected that challenge in circumstances, such as the present case, where the speaker of the House and the president of the Senate have both signed the bill in question certifying that the proper procedure was followed in passing the bill into law. See *Friends of the Parks v. Chicago Park District*, 203

_____

[6]Plaintiffs merely make this argument here to preserve it for later possible review by the Illinois Supreme Court.

29

Ill. 2d 312, 328-29 (2003). We are bound by the supreme court's decision in that regard. See

*Angelini v. Snow*, 58 Ill. App. 3d 116, 119 (1978). Thus, plaintiffs' arguments on this issue cannot

prevail.

¶ 62                                      III. CONCLUSION

¶ 63          For the foregoing reasons, we affirm the decisions of the Board and of the trial court.

¶ 64          Affirmed.

*Kievlan v. Judges Retirement System of Illinois*, 2026 IL App (1st) 250150

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-CH-1708; the Hon. Alison C. Conlon, Judge, presiding. |
| **Attorneys for Appellant:** | Terrence J. Sheahan and Jill C. Anderson, of Smith, Gambrell & Russell, LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellees. |
| *Amici Curiae*: | John M. Fitzgerald, of Tabet Divito & Rothstein LLC, of Chicago, for *amicus curiae* Illinois Retired Teachers Association.<br><br>John T. Shapiro, of Porter Wright Morris & Arthur LLP, of Chicago, and Eric M. Madiar, of Madiar Government Relations, LLC, of Springfield, for *amici curiae* State Universities Annuitants Association *et al.* |